Filed: 2/8/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of Charles and Lori SCHLEICH. | H039870, H041234 (Santa Clara County Super. Ct. No. 6-09-FL-001572) |
| CHARLES SCHLEICH, Appellant, v. LORI HOLEK, Respondent. | |

Charles Schleich (Husband) appeals from a judgment dissolving his marriage to Lori Holek (Wife), following a lengthy trial addressing several disputed issues. He challenges the trial court's imposition of the "value of the asset" remedy under Family Code section 1101, subdivisions (g) and (h) for failing to make financial disclosures in the dissolution proceedings he viewed as having no impact on Wife's interest in the community estate. He also challenges the award of certain assets in the division of the community estate as duplicative of the remedy imposed under section 1101,[1] and the award of permanent spousal support. In a related appeal, Husband challenges the trial court's post-judgment award to Wife of need-based attorney's fees ($412,485) and attorney's fees as sanctions for the fiduciary duty breaches ($318,510).

---

[1] Undesignated statutory references are to the Family Code. Undesignated subdivisions refer to section 1101.

As we will explain, the trial court erred by making duplicative awards of community assets. The award to Wife of 50 percent of a community asset (or 50 percent of the value of the asset) as a remedy under subdivision (g) is an award of the same interest in the asset awarded in the division of community property, and can be awarded only once. Similarly, the trial court erred by awarding Wife the full value of certain community assets as a remedy under subdivision (h) in addition to 50 percent of the same asset in the division of property. Once Wife received the entire asset under subdivision (h), there was no longer a community interest in that asset subject to property division.

The trial court also erred by finding breaches of fiduciary duty under section 1101 for dissolution disclosure violations involving Husband's separate property and community income earned and spent before separation. Post-separation disclosure violations involving separate property or community income spent before the date of separation do not support breach of fiduciary duty claims under section 1101 because they have no impact on the community estate. The breaches, however, are sanctionable under section 2107.

We cannot tell from the record before us whether the award to Wife of sanctions-based fees and costs depended on the relative number of breach of duty issues on which she prevailed. Therefore, we will reverse and remand the attorney's fees judgment to give the trial court the opportunity to reexamine the amount of fees and costs awarded under sections 1101 and 2107, in light of our determinations on the breach of fiduciary duty claims. In all other respects, we will uphold the two judgments in their entirety.

## I. BACKGROUND

In February 2009 Husband filed a petition to divorce Wife. The parties enjoyed a high standard of living during the nearly 10-year marriage. They built a house, a barn, and stables on an undeveloped ranch in Lemon Cove, Tulare County, that Husband had purchased before the marriage. They purchased horses and equipment to operate the

2

ranch, which supported Wife's hobby/vocation of raising and training horses. Wife maintained the ranch, and Husband, who lived and worked in the Silicon Valley during the week, flew home to the ranch on weekends. The parties purchased a second ranch with a small guest cottage in Exeter, also in Tulare County, during the marriage. At the time Husband filed for divorce, the parties owned the two ranches, 15 horses, nine vehicles, six motorcycles, two Airstream travel trailers, an airplane, a boat, three horse trailers, and three tractors.

Husband earned over $200,000 annually throughout the marriage, employed by a semiconductor manufacturer in San Jose. He also ran two side businesses that generated substantial income selling parts to his employer. Wife was not involved in Husband's business activities and she only became aware of the side businesses after the parties separated.

Husband served Wife with the dissolution petition and a $75,000 marital settlement agreement, warning her that "it could get very ugly" if she did not sign the agreement. Wife rejected the offer and retained counsel who sought temporary spousal support ($7,100 monthly) and $150,000 in pendente lite need-based attorney's fees under section 2030, in part to discover hidden assets. In April 2009, the court set temporary spousal support at $6,233 monthly and ordered Husband to pay Wife $75,000 in need-based attorney's fees.

In July 2009 Wife moved for evidentiary and monetary sanctions, including $122,531 in attorney's fees and costs as a sanction under section 271 and section 2107, subdivision (c), because Husband had not complied with dissolution financial disclosure requirements and was preventing Wife from discovering "the true extent of his income and financial condition." Wife also sought $150,900 in need-based attorney's fees under section 2030, and $25,386 in monthly spousal support. In a declaration supporting that motion, Wife stated that Husband told her he "refused to settle this case unless I 'got rid

3

of' my attorneys," and that "he will litigate this case until there is nothing – money or assets – left to be divided."

After a long-cause hearing, in February 2010 the court ordered Husband to pay Wife $7,600 in monthly support retroactive to March 2009, and $6,800 in monthly support for 2010. The court ordered Husband to pay Wife an additional $30,000 in need-based attorney's fees, and reserved ruling on Wife's sanctions motion. The court commented that Husband had "shown an unwillingness or inability to completely self-report income" so that it could not "trust that [Husband] was reinvesting in good faith rather than attempting to avoid additional support obligations." This court issued an unpublished opinion in *In re Marriage of Schleich* (H035513, filed May 10, 2011) affirming the long-cause order against Wife's claims of error, including her claim that the trial court abused its discretion by reserving judgment on the request for sanctions rather than ruling on the motion.

In July 2011, Wife again moved for attorney's fees and sanctions, seeking $200,000 in need-based attorney's fees and $200,000 in sanctions for Husband's breaches of fiduciary duty and his misconduct throughout the case. She also sought an increase in temporary spousal support. Opposing Wife's motion, Husband requested $100,000 in attorney's fees as a sanction for increasing his litigation costs. Wife opposed Husband's request to continue the hearing date. She later agreed to Husband's request that the motion be heard with the trial set for January 2012 to avoid a double setting after Husband indicated the hearing would require at least a full day and no full day setting was available until January.

In the parties' respective trial briefs, Husband restated his request for $100,000 in attorney's fees and costs as a sanction, and Wife asked for $950,000 in need-based attorney's fees and costs and $300,000 in attorney's fees as a sanction. Her trial brief identified several alleged fiduciary duty breaches by Husband, and she argued for an

4

award of 100 percent of any undisclosed or transferred assets as a penalty under section 1101, subdivision (h).

After an eight-day trial in January 2012, the parties submitted a joint list of disputed issues for decision. With the parties' input, the court prepared tables identifying each party's breach of fiduciary duty claims, with the parties' positions on each claim supported by record citations. The court issued a proposed statement of decision, and, after hearing argument on the parties' objections, issued a 50-page statement of decision in February 2013 addressing temporary and permanent spousal support, property characterization, reimbursement claims, and sanctions for breaches of fiduciary duty (two by Wife and 12 by Husband). The statement of decision was followed by an order and accounting directing Husband to pay Wife $826,789 ($25,496 in spousal support arrears, $245,273 to divide the community estate, and $556,020 to remedy Husband's fiduciary breaches). The court reserved ruling on attorney's fees pending an anticipated mediation that was ultimately unsuccessful.

After further briefing and argument, in May 2014 the court issued a statement of decision addressing attorney's fees. The court awarded Wife $318,510 in attorney's fees and $5,737.50 in costs as a remedy under section 1101, subdivisions (g) and (h) and section 2107 for attorney time and effort related to Husband's breaches of fiduciary duty. That award was offset by $15,000 for attorney's fees incurred by Husband associated with Wife's breaches of fiduciary duty. Wife was awarded $412,485 in need-based attorney's fees (out of $1,543,321 requested) under section 2030, offset by $105,000 for fees paid to her earlier.

Husband has appealed from the judgments incorporating both statements of decision.

## II. DISCUSSION

### A.   STANDARDS OF REVIEW

We review a trial court's division of community property and imposition of sanctions in dissolution proceedings under the abuse of discretion standard. (*In re Marriage of Quay* (1993) 18 Cal.App.4th 961, 966 [property division]; *In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1478 [sanctions under sections 271 and 2107].)  Spousal support orders and attorney's fees awards are also reviewed for abuse of discretion.  (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 283 [attorney's fees under section 2032]; *In re Marriage of Feldman*, at p. 1478 [attorney's fees under sections 271 and 2107].)  We review questions of law presented on undisputed facts de novo.  (*In re Marriage of Blazer* (2009) 176 Cal.App.4th 1438, 1443.)  We also apply an independent standard of review to questions of statutory interpretation.  (*People v. Johnson* (2007) 150 Cal.App.4th 1467, 1481.)

"A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness."  (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)

### B.   STATUTORY FRAMEWORK

#### 1.   Marital Rights and Obligations

Division 4 of the Family Code addresses marital rights and obligations.  Within that division, section 721 recognizes the confidential relationship held by spouses.  That relationship is a fiduciary relationship "impos[ing] a duty of the highest good faith and fair dealing on each spouse[.]" (§ 721, subd. (b).)  Also within that division, section 1100 addresses management and control of community property.  Subdivision (e) of that section provides:  "Each spouse shall act with respect to the other spouse in the management and control of the community assets and liabilities in accordance with the general rules governing fiduciary relationships which control the actions of persons having relationships of personal confidence as specified in Section 721, until such time as

6

the assets and liabilities have been divided by the parties or by a court.  This duty includes the obligation to make full disclosure to the other spouse of all material facts and information regarding the existence, characterization, and valuation of all assets in which the community has or may have an interest and debts for which the community is or may be liable, and to provide equal access to all information, records, and books that pertain to the value and character of those assets and debts, upon request."

Section 1101 creates a right of action and specific remedies for the breach of a spouse's fiduciary duty "that results in impairment to the claimant spouse's present undivided one-half interest in the community estate[.]"  (§ 1101, subd. (a); *In re Marriage of Prentis-Margulis & Margulis* (2011) 198 Cal.App.4th 1252, 1270.)  A section 1101 action may be brought separate from or in conjunction with a dissolution action.  (§ 1101, subd. (f).)  Section 1101, subdivisions (g) and (h) provide remedies for a spouse's breach of fiduciary duty.  Under subdivision (g), "[r]emedies for breach of the fiduciary duty by one spouse, including those set out in Sections 721 and 1100, shall include, but not be limited to, an award to the other spouse of 50 percent, or an amount equal to 50 percent, of any asset undisclosed or transferred in breach of the fiduciary duty plus attorney's fees and court costs."  When the breach constitutes fraud, oppression or malice, the remedy "shall include, but not be limited to, an award to the other spouse of 100 percent, or an amount equal to 100 percent, of any asset undisclosed or transferred in breach of the fiduciary duty."  (§ 1101, subd. (h).)

### 2.     Marital Dissolution

Division 6 of the Family Code addresses marital separation and dissolution. Chapter 9 of Part 1 of that division, titled "Disclosure of Assets and Liabilities," contains sections 2100 to 2113.  Section 2100 announces a public policy of full disclosure and cooperation in a marital dissolution.  (§ 2100, subd. (b).)  To that end, subdivision (c) mandates "a full and accurate disclosure of all assets and liabilities in which one or both parties have or may have an interest" in the early stages of a dissolution proceeding,

7

"regardless of the characterization as community or separate, together with a disclosure of all income and expenses of the parties." Subdivision (c) imposes "a continuing duty to immediately, fully, and accurately update and augment that disclosure" so that "each party will have a full and complete knowledge of the relevant underlying facts."

Section 2102 extends the fiduciary standards under section 721 "to all activities that affect the assets and liabilities of the other party" from the date of separation to the date community property is distributed in dissolution proceedings. (§ 2102, subd. (a).) Those activities include (1) "accurate and complete disclosure of all assets and liabilities in which the party has or may have an interest or obligation and all current earnings, accumulations, and expenses," including "immediate, full, and accurate update[s];" (2) accurate and complete written disclosure of any investment or business opportunity; and (3) the operation or management of a business (or a business interest) in which the community may have an interest. (§ 2102, subd. (a)(1)–(3).)

Section 2107 mandates monetary sanctions against a party who fails to comply with any provision in Chapter 9 "in an amount sufficient to deter repetition of the conduct or comparable conduct." (§ 2107, subd. (c).)

Section 271, located under the Family Code's General Provisions, provides as a sanction that the court may award attorney's fees or costs when a party's conduct "frustrates the policy of the law to promote settlement of litigation" and "to reduce the cost of litigation by encouraging cooperation between the parties and attorneys." (§ 271, subd. (a).)

## C. CHALLENGES TO FIRST STATEMENT OF DECISION

### 1. Section 1101 Breach of Fiduciary Duty Claims

Husband challenges the trial court's imposition of the section 1101, subdivisions (g) and (h) remedies for failing to comply with financial disclosure obligations regarding (1) separate property, (2) pre-separation side business income, (3) a

8

pre-separation loan from community funds, and (4) a post-separation car purchased with community funds.[2]

### a. Husband's separate property

Relying on *In re Marriage of Simmons* (2013) 215 Cal.App.4th 584 (*Simmons*), Husband argues that the trial court erred by applying the subdivision (g) remedy to his failure to disclose separate property. In *Simmons*, a marriage dissolution action, the trial court imposed $150,000 in sanctions against a husband under section 2107 for breach of the fiduciary disclosure duties, $250,000 in sanctions under section 271 for uncooperative conduct, and the entire value of the husband's separate property savings account (over $245,000) under subdivision (h) for fraudulently failing to disclose that asset. (*Simmons*, at pp. 588–589.) The appellate court reversed the portion of the judgment awarding sanctions under subdivision (h), holding that remedy "applies only to the nondisclosure of a community property asset, and it does not apply to the nondisclosure of a separate property asset." (*Id.* at pp. 587, 595.)

The *Simmons* court looked to the placement of subdivision (h) in section 1101—a section of the Family Code exclusively concerning community property—to support its conclusion that "any asset" in subdivision (h) means any community asset. The court read subdivision (h) in conjunction with subdivision (a), providing for a breach of fiduciary duty claim "upon an impairment of a community interest." (*Simmons*, *supra*, 215 Cal.App.4th at p. 593.) Further, the *Simmons* court observed that subdivision (f) authorizes a section 1101 breach of fiduciary duty claim to be brought during a marriage, where separate property would be irrelevant to any fiduciary breach determination. (*Simmons*, at p. 593.) *Simmons* also noted other remedies in the Family Code expressly

---

[2] The statement of decision supports imposition of the value of the asset remedy for every fiduciary breach with a citation to section 1100, subdivision (g). We understand the trial court to be imposing the "50 percent of the asset" remedy under section 1101 subdivision (g) and the "100 percent of the asset" remedy under section 1101, subdivision (h).

applicable to separate property in dissolution proceedings—section 271 for uncooperative conduct and section 2107 for nondisclosure of any asset. (*Simmons*, at p. 593.) The court considered the fundamental principle of community property and the corollary spousal fiduciary duty to preserve the other's one-half interest in that property. It viewed subdivision (h) as a deviation from community property's equal ownership and division principles, which would not extend to separate property because separate property is not subject to equal ownership. (*Id*. at pp. 593–594.)

The *Simmons* court noted the reference to section 721 in subdivision (h) and observed that the fiduciary duty under that section is broad enough to encompass the duty to disclose separate property assets in dissolution proceedings. (*Simmons*, *supra*, 215 Cal.App.4th at p. 594.) Still, it declined to construe the subdivision (h) reference to section 721 as an intent to extend the subdivision (h) remedy to nondisclosure of separate property because "the statutory context and nature of the section 1101(h) remedy show that the remedy is confined to community property … ." (*Id*. at p. 594.)

We agree with *Simmons* and conclude that its analysis, although focused on subdivision (h), necessarily applies to subdivision (g). Both subdivisions (g) and (h) provide remedies for a spouse's fiduciary breach that impairs the other's community property interest, the distinction being only whether the breaching spouse's conduct constitutes oppression, fraud, or malice.

Wife argues that *Simmons* was wrongly decided. She contends that the Legislature, by including references to community property in other subdivisions of section 1101, did not intend to limit the section 1101 remedies to community assets; thus, the omission of any reference to "community" assets in subdivisions (g) and (h) must have been purposeful. In our view, a reading of section 1101 in its entirety demonstrates the opposite. Subdivisions (g) and (h) provide remedies for claims brought under section 1101. Under subdivision (a), a breach affecting the claimant's community property

10

interest is required to support that claim, making it unnecessary for the remedy provisions also to characterize the relevant asset as a community interest.

Wife also argues that Husband would be held harmless for violating section 721's disclosure duties regarding his separate property if subdivisions (g) and (h) did not provide remedies for those breaches. That is incorrect. Husband's fiduciary breaches that impair Wife's community property interests are appropriately remedied under subdivisions (g) and (h), and Husband can be held accountable for non-disclosures implicating his separate property interests under section 2107.

### i. The brokerage accounts

Husband maintained three investment brokerage accounts with a collective balance at separation of $133,763. The parties agreed that $25,800 was community property and the remainder was Husband's separate property. Wife does not dispute that property characterization. The court abused its discretion by awarding Wife 50 percent of the collective account balances ($66,882) under subdivision (g) because Husband did not breach any fiduciary duty impairing Wife's interest in the community estate by failing to disclose his separate assets. Under subdivision (g), Wife is entitled to half of the $25,800 community funds ($12,900) plus attorney's fees for Husband's breach. Husband is also subject to sanctions under section 2107 for breaching his dissolution disclosure obligations related to both his separate and community interests in the accounts.

Wife withdrew about $8,000 of community funds after the parties had separated without informing Husband.[3] She, in turn, was penalized by the trial court under subdivision (g) for failing to disclose that activity. Husband argues that Wife should not

---

[3] The record shows the actual amount as $8,400. But Husband pursued his breach of fiduciary claim in the trial court using an $8,000 figure, and the court relied on that amount in sanctioning Wife. Husband has forfeited any argument relying on the $8,400 figure. (See *In re Marriage of Calcaterra and Badakhsh* (2005) 132 Cal.App.4th 28, 37.)

11

receive a 50 percent interest in that portion of the community funds under subdivision (g) because Wife appropriated those funds to herself. For the reasons stated in part II.C.2, we agree. Under subdivision (g), a prevailing spouse is awarded attorney's fees and court costs for the other spouse's breach regarding a community asset, but neither spouse is entitled to more than his or her 50 percent interest in that asset. Accordingly, Wife's earlier withdrawal must be deducted from her $12,900 interest in the community funds. Because the court penalized Wife $4,000 under subdivision (g) for withdrawing $8,000 from the community funds, Wife is ultimately entitled to $8,900 (instead of $66,882) so that each party receives a 50 percent share of the entire asset.

### ii.     The vintage Corvette

The statement of decision's reference to the vintage Corvette as community property appears to be a mistake. The characterization of the Corvette as separate property was not a disputed trial issue. Wife admitted in her April 2009 disclosure that the Corvette was Husband's separate property, and Husband testified to purchasing the car before the marriage. The parties do not dispute that the Corvette was Husband's separate property or that he failed to disclose the post-separation sale of that asset, valued at $30,000. As we have explained, Husband cannot be penalized under subdivision (g) because the sale of the Corvette did not impair Wife's interest in the community estate. But Husband is subject to sanctions under section 2107 for breaching his disclosure obligations regarding that sale.

### b.     Undisclosed pre-separation income

Husband argues that the court erred in applying the subdivision (h) remedy for failing to disclose $164,614 in side business income received and spent during the year before separation. He acknowledges that he breached a fiduciary duty by failing to disclose the income on his early income and expense declarations. But he argues that his failure to report the pre-separation income in post-separation dissolution disclosures is not a fiduciary breach involving a community asset under section 1101 because that

12

income had been spent during the marriage. Although he had the duty to disclose his earnings, those earnings, having been spent, were not part of the community estate in February and April 2009 when the breaches occurred. In his view, Husband was subject to sanctions under section 2107 for failing to disclose income, but not under section 1101 because no breach occurred regarding Wife's post-separation interest in that income.

As we have explained, although the section 1101 remedies may extend to disclosure breaches, they are limited to disclosure breaches that "result in impairment to the claimant spouse's present undivided one-half interest in the community estate." (§ 1101, subd. (a).) In the statement of decision, the court concluded: "Given the parties' lifestyle during marriage and the income necessary to maintain that lifestyle, … the [side business] income earned during marriage was spent *pre-separation* for the mutual benefit of the community." (Italics in original.) The failure to disclose income received and spent pre-separation on a post-separation income and expense declaration is not a fiduciary breach resulting in the impairment of the claimant spouse's interest in the community estate under section 1101, subdivision (a) because that income, having been spent, is no longer part of the community estate when the post-separation breach occurred. Accordingly, the court erred by applying the subdivision (h) remedy to those disclosure violations.[4]

Wife cites *In re Marriage of Fossum* (2011) 192 Cal.App.4th 336 (*Fossum*), *In re Marriage of Rossi* (2001) 90 Cal.App.4th 34 (*Rossi*), and *In re Marriage of Geraci* (2006) 144 Cal.App.4th 1278 (*Geraci*), to argue that income should be treated as an asset

---

[4] The court applied the subdivision (g) and (h) remedies to Husband's failure to disclose two other checks for income earned pre-separation but received post-separation. Husband does not challenge the court's characterization of that income as an asset. Indeed, that income, having not dissipated during the marriage, is properly characterized as a community asset for dissolution disclosure purposes. (Cf. *In re Marriage of Prentis-Margulis & Margulis*, *supra*, 198 Cal.App.4th at p. 1259, fn. 4; *In re Marriage of Koppelman* (1984) 159 Cal.App.3d 627, 633–634.)

13

upon receipt, but none of those cases apply a section 1101 remedy to a post-separation breach involving assets dissipated before separation. In *Fossum*, the court held that husband was entitled to attorney's fees under subdivision (g) for wife's pre-separation breach of fiduciary duty. (*Fossum*, at p. 347.) The wife had taken a $24,000 cash advance without disclosing the transaction to husband, and that breach resulted in a community debt impacting husband's present interest in the community estate. In *Rossi*, the court upheld a subdivision (h) award to husband of wife's pre-separation lottery winnings received post-separation because wife fraudulently failed to disclose the winnings in dissolution proceedings. (*Rossi*, at p. 42.) The lottery winnings were a community asset, and wife's failure to disclose the winnings impaired husband's interest in the community asset.

In *Geraci*, the trial court had ordered husband to pay a disproportionate share of the community debt for violating dissolution disclosure duties and fiduciary duties as a business partner. The case was remanded for a redetermination of sanctions after the appellate court concluded that a post-separation business partnership between husband and wife did not exist so husband had not breached any fiduciary duty to wife as a business partner. (*Geraci*, *supra*, 144 Cal.App.4th at pp. 1295–1296.) The *Geraci* court approved of "some type of punishment or sanctions" against husband for disclosing false post-separation earnings, but it made no reference to section 1101. (*Id*. at p. 1295.)

Wife argues that Husband's fiduciary duty violations were not limited to the non-disclosure in his declarations. She presses that Husband breached his fiduciary duty in the management of the community estate by failing to disclose the existence of the side businesses and by shutting down the businesses to reduce his financial obligations pre-separation. The problem with Wife's position is that the trial court did not find any fiduciary breaches or impose section 1101 remedies for any pre-separation conduct. The statement of decision found that Husband breached his fiduciary duty post-separation by failing to comply with disclosure requirements, and Wife has not appealed that ruling.

14

### c.    Undisclosed pre-separation loan

Husband argues that the trial court erred by imposing the subdivision (g) remedy for failing to disclose a $200,000 loan made from community funds in February 2008, $178,750 of which was repaid before separation ($148,750 in April 2008 and $30,000 in August 2008).  The court characterized the full loan as an asset and awarded Wife $100,000 for Husband's failure to identify the loan on the February 2009 preliminary disclosure declaration.  The court rejected Wife's argument that Husband had breached his fiduciary duty pre-separation by loaning the money without her knowledge, because "it was commonplace for [Husband] to conduct business transactions without consulting [Wife] given the parties' consensual arrangement regarding financial matters during marriage."

As with the undisclosed income that had been received and spent before separation, Husband argues that the $178,750 loan repayment also was income received and spent before separation.  Although the court did not make a dissipation finding with respect to the loan repayment, it did admit into evidence a 14-page accounting of a brokerage account to which the repayments were deposited (Joint Exhibit 44).  That exhibit, stipulated to by the parties, showed the $148,750 repayment deposited in April 2008 followed about six weeks later by a $175,000 transfer of funds to an Ecopeds account,[5] resulting in a zero balance in the community funds contained in the brokerage account as of June 2008.  Joint Exhibit 44 also shows the $30,000 loan repayment deposited in August 2008, and the parties stipulated to a community interest in that account as of the date of separation of $17,283.

The trial court did not abuse its discretion by finding that Husband breached his fiduciary duty by failing to disclose the money received in repayment of the loan as part of his February 2009 preliminary disclosure.  The income and expense declaration

_____

[5] Ecopeds was an investment funded by Husband during the marriage and post-separation with community funds.

15

provides a line for "one-time money," including "lottery winnings, inheritance, etc.," and the schedule of assets and debts asks for "accounts receivable and unsecured notes." The money received could have been acknowledged in either place.

We conclude, however, that Husband's failure to account for the $148,750 repayment is not a fiduciary breach under section 1101 because it did not impair Wife's community interest as of February 2009. That money had been invested in Ecopeds and there was no impairment to that investment (which was disclosed as an asset) by failing to report the $148,750 repayment. Wife's interest in the community also was not impaired by the failure to report the $30,000 deposit. To the extent any of those funds constituted an asset to be disclosed in the dissolution proceedings, they were part of the brokerage account which community portion was already subject to the subdivision (g) remedy. Thus, the trial court abused its discretion by finding a breach under section 1101 as to the loan repayments.

Further, the balance of the loan—$21,250—constituted an asset that should have been disclosed on the preliminary disclosure's schedule of assets and debts under line item 14, accounts receivable and unsecured notes.[6] Husband's failure to account for that asset was a breach of his disclosure duty, entitling Wife to half the asset under subdivision (g). The court characterized the $21,250 money owed as a community asset in a separate part of the statement of decision, and imposed a continuing obligation on Husband to disclose any reimbursement of those funds. For the reasons stated in part II.C.2, Wife is not entitled to a double recovery of her half of this asset. The subdivision (g) award satisfies her interest in full, relieving Husband from an obligation to disclose any future receipt of funds.

---

[6] Wife argues that the loan should have been listed on the Schedule of Assets and Debts as a debt under line item 22: Loans—Unsecured. But Husband did not borrow money that would constitute a debt. He gave money to a third party. To the extent that money was a loan or investment (not a gift), it would constitute an asset, not a debt.

16

### d.     Undisclosed post-separation car purchase

Husband argues that the trial court erred by granting Wife 50 percent of the value of a Mercedes Benz he purchased post-separation but did not formally disclose until November 2011, because Wife also purchased a vehicle post-separation that she did not formally disclose until November 2011.  Husband contends that the court erred by distinguishing the transactions and finding that he breached a fiduciary duty but that Wife did not, since the facts regarding disclosure of the two transactions are substantially the same.

We find no abuse of discretion.  Husband purchased his car in March 2009, one month after separation, and he omitted the car from his May 2009 and June 2011 schedules of assets and debts.  In contrast, Wife, who purchased her car in 2010, did not omit her acquisition from any formal disclosure, and she acknowledged the acquisition formally when she updated her schedule of assets and debts in November 2011.  Although there was conflicting evidence presented at trial about whether each party was aware of the other party's purchase before formal disclosures were made in November 2011, the court based its finding with respect to Husband's breach on the fact that Wife "reported the transaction on her next financial disclosure document whereas [Husband] filed two financial disclosures subsequent to the vehicle purchase which did not report the activity *and* it was not formally disclosed until over two and one-half years later."  The court was within its discretion to distinguish the transactions based on Husband's affirmative omissions from the written disclosures and the length of delay in formally disclosing the purchase.

### 2.     Duplicative Awards

Husband argues that the court erred by making duplicative awards to Wife for half the proceeds of two community property assets.  Husband sold a Porsche after separation, and he failed to disclose the $18,000 proceeds from that sale.  The court awarded Wife 50 percent of the sale proceeds under subdivision (g) for that fiduciary breach.  Wife also

received half of the sale proceeds in the court's division of community property. The court awarded Wife 100 percent of side business income ($58,650) received by Husband post-separation under subdivision (h), in addition to awarding her half of that asset as part of the property division.

Husband argues that Wife is not entitled to a duplicative award of her community share of the Porsche proceeds ($9,000) and the side business income ($29,325) because that would violate the prohibition against double recovery of the same one-half community property interest. Husband cites *Simmons*, where the court explained: "[A] fundamental principle of family law, including during dissolution proceedings, is that each spouse has a one-half interest in community property. (§ 2550.) The fiduciary duty with respect to marital property is designed, among other things, to preserve that one-half interest. (§ 1101, subd. (a).) Through the enactment of [subdivision (h)'s 100 percent] value of the asset remedy, the Legislature has in effect altered the one-half interest community property formula in the event a spouse violates his or her duty to preserve the other spouse's one-half right to the property, by awarding the aggrieved spouse *more* than his or her one-half interest." (*Simmons*, *supra*, 215 Cal.App.4th at pp. 593–594, original italics.) In Wife's view, the sanction is mandatory and unrelated to the division of property.

Wife argues that Husband has waived this argument by agreeing to the division of community property outlined in a joint exhibit, and by not disputing that division when the court issued its Order and Accounting. But Husband is not disputing that division, he is disputing what he considers to be duplicative awards of the same community assets under section 1101, which were not apparent from the proposed or final statements of decision. During argument on the proposed statement of decision, when discussing the $58,000 side business income received post-separation, Husband pressed that the court had to take into account his 50 percent share of that asset when imposing a penalty under subdivision (h). Wife appeared to agree. When asked by the court how it should deal

18

with each party's 50 percent share of a community asset when awarding 100 percent of the asset for fiduciary breaches, Wife explained: "It's a penalty, so his half is being forfeited as a result of his behavior. I believe that's very specifically stated in 1101." Wife did not characterize the penalty as a $58,000 award *in addition to* her $29,000 community share of the asset. Husband's position was further acknowledged by Wife at an April 2013 hearing addressing the proposed order and accounting she had prepared, when Wife stated that Husband's "double dipping" argument had been heard throughout the trial.

Subdivision (g) directs the trial court to award the claimant spouse "50 percent, or an amount equal to 50 percent, of any asset undisclosed or transferred in breach of the fiduciary duty[.]" Subdivision (h) uses identical language, except it provides for a 100 percent award instead of 50 percent. We must decide whether an award under those subdivisions necessarily encompasses the prevailing spouse's interest in a community asset upon dissolution, or whether the award is in addition to that interest. Statutory language is to be given plain and commonsense meaning consistent with the apparent intention of the lawmakers. (*Coalition of Concerned Communities, Inc. v City of Los Angeles* (2004) 34 Cal.4th 733, 737.) Where a statute is subject to two or more reasonable interpretations, the interpretation which will harmonize rather than conflict with other provisions should be adopted. (*People v. Kuhn* (1963) 216 Cal.App.2d 695, 698.)

Wife argues Husband's fiduciary breaches "justify[] an award of sanctions equivalent to 50% of the asset's value under Section 1101(g)." But subdivision (g) does not provide for "a sanction equivalent to" half the asset's value. Subdivision (g) provides that a prevailing spouse may be awarded as a remedy "an amount equal to 50 percent of the asset," *as an alternative to* an award of 50 percent of the asset itself. The claimant and breaching spouses' collective interest in a community asset cannot exceed 100 percent. Given that the fiduciary duty recognized under section 1101 is a duty intended

19

to *preserve* each spouse's one-half interest in the community estate (*Simmons*, *supra*, 215 Cal.App.4th at p. 593; see also CA Family Law Practice Guide, § 24.16[1] [section 1101 remedies "are essentially disgorgement of profits and reclamation of property placed beyond the reach of the harmed spouse"]), the 50 percent interest awarded under subdivision (g) must be the same 50 percent interest that would be awarded in the overall division of community assets. After a claimant is awarded his or her interest in an asset under subdivision (g), there is no longer an asset to divide in the dissolution proceedings. Likewise, under subdivision (h) the claimant spouse is entitled to 100 percent of an asset—his or her 50 percent share plus the breaching spouse's one-half interest in the asset. The claimant spouse does not receive an additional 50 percent share of the asset in the division of property because he or she has already been awarded the asset in its entirety under subdivision (h).

The alternative "amount equal to" remedy under subdivision (g) should be interpreted to achieve the same result as an award of one half the asset itself. Thus, if the claimant spouse obtains an award *equal to* 50 percent of an undisclosed asset (as with the proceeds from the Porsche sale here), then the claimant spouse would necessarily abandon the community interest in the asset, as subdivision (g) clearly provides that the claimant spouse either receive his or her 50 percent interest in the asset *or* an amount equal to that interest, but not both. Under that scenario, the breaching spouse would retain the asset as separate property, the claimant spouse would receive an award equivalent to his or her community interest in the asset, and there would be no community asset to divide upon dissolution.

If we were to interpret subdivision (g) as providing for an award equivalent to 50 percent of the asset, while at the same time allowing the claimant spouse to assert an independent community interest in the same asset, as Wife urges, then the remedy would have a different result depending on whether the breaching party transferred a community asset or failed to disclose the asset. If the asset were transferred (as opposed to

20

undisclosed), the claimant spouse would be awarded an amount equal to the community interest in the asset, but if the asset were hidden, then the claimant spouse could be awarded the value of that asset while retaining his or her community interest in it. In our view, the Legislature did not intend these disparate results.

To summarize, the court erred as a matter of law finding breaches of fiduciary duty under section 1101 and applying subdivisions (g) and (h) remedies totaling $327,357 for Husband's disclosure violations involving separate property ($57,982 [$66,882 minus $8,900] for the brokerage accounts and $15,000 for the vintage Corvette sale, for community income dissipated before separation ($165,000), and for loan repayments received pre-separation ($89,375). The court also erred by awarding Wife her community interest in the proceeds of the Porsche sale ($9,000), post-separation side business earnings ($29,325), and the remaining money owed on the loan ($10,625) twice—once as a section 1101 remedy for Husband's fiduciary breach and again in the division of community property.

### 3. Permanent Spousal Support

Husband argues that the trial court erred by awarding Wife permanent spousal support in an amount he has no ability to pay. Family Code section 4320 sets forth the factors that must be considered in a spousal support award, including "[t]he ability of the supporting party to pay spousal support, taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living." (*Id.*, subd. (c).)[7] The trial court has broad discretion balancing and determining the appropriate weight to be given to each factor, " 'with the goal of accomplishing

---

[7] Section 4320 also requires the trial court to consider these relevant factors: each party's earning capacity and ability to work, each party's obligations and assets, each party's needs based on the standard of living established during the marriage, any immediate and specific tax consequences, the duration of the marriage, the parties' ages and health, a balancing of hardships, and "any other factors the court determines are just and equitable." (§ 4320, subds. (a), (d), (e), (f), (h), (j), (k), (n).)

21

substantial justice for the parties in the case before it.' " (*In re Marriage of Cheriton*, *supra*, 92 Cal.App.4th at p. 304.)

### a. The trial court's findings

Regarding Husband's earning capacity, the trial court found that Husband has shown "entrepreneurial talent (ironically, through operation of the 'side businesses' which ultimately resulted in his termination from [the semiconductor company] such that he could pursue self-employment," and he "has industry contacts and is knowledgeable about starting a business." The court found that Husband's "skills and experience demonstrate that he has the ability to be gainfully employed in the future," that Husband "could sustain a living through self-employment," and there was no "significant impediment to [Husband's] ability to pursue self-employment opportunities[.]"

The court found that Husband will receive income from investments and assets. The court noted the all-purpose family court judge's earlier finding that Husband was not investing in good faith but was attempting to avoid additional support obligations. The court found that Husband favored dealing in cash, and it had "obvious concerns about the accuracy of [Husband's] financial accounting and the ability to accurately trace/identify his assets in order to make a reasoned determination of his ability to pay support." It found that Husband had access without penalty to nearly $300,000 in retirement funds and $192,291 in bank and brokerage accounts. It found a 3 percent rate of return reasonable to impute to those assets, and noted that reasonable withdrawals from retirement accounts may also be imputed as income when a party reaches age 59½. The court valued the Lemon Cove property at approximately $700,000, it identified Husband's $360,000 separate interest in the Exeter property, and it imputed income to those assets.

The trial court imputed $35,000 in annual income to Wife beginning September 1, 2013. It ordered Husband to pay Wife $6,000 in monthly spousal support from

22

December 2012 to August 2013, and it reduced the monthly award to $2,600 beginning September 2013 based on Wife's imputed income.

### b. Analysis

Husband argues that the trial court did not undertake a calculation of his imputed income available for support, and that had it done so it would have found he lacked the ability to pay support. Specifically, Husband argues that the $192,291 bank and brokerage accounts figure was wrong, and that the parties' experts had agreed the correct amount was $60,000. He further argues that the court failed to offset Husband's income-producing assets with Wife's income-producing assets. Husband calculates his income-producing assets at $1,464,020 and Wife's at $987,871 ($826,789 under the judgment plus $161,082 in prejudgment assets). Thus, according to Husband, the difference of $476,149 is the figure the trial court should have used to calculate his support obligation. Imputing a 3 percent rate of return on $1,464, 020 would yield $3,660 in monthly income and 3 percent of $476,149 would yield a monthly income of $1,190. Using either figure, Husband argues he cannot pay support given that his monthly expenses are $8,773,[8] and he should not be required to invade investment principal to satisfy support obligations.

### i. Husband's ability to pay

As a preliminary matter, the record does not support Husband's assertion that the experts agreed that Husband's bank and brokerage accounts had dissipated to $60,000. The trial court relied on an exhibit prepared by Wife's expert, showing a balance of $192,291, a figure that was largely consistent with the account balances Husband provided on his November 2011 assets schedule. The court was not required to accept the testimony by Husband's expert that Husband had told him that $60,000 remained in those accounts.

---

[8] That figure is taken from Husband's January 2012 income and expense declaration, which includes $2,915 for "auto expenses and transportation," a 401K contribution of $406, and $592 for "health club, horses, accounting."

As Husband's own calculation shows, the rate of return on his assets amounted to $3,660 per month, which more than covers the $2,600 monthly obligation. But the court based its finding on more than the income that could be imputed to Husband's assets. In addition to Husband's known assets, the court noted Husband's demonstrable work history that provided for the parties' "high standard of living" during the marriage, and Husband's ability to earn a gainful living through self-employment.

Husband argues that the court failed to consider that he would have to exhaust his accounts and sell the Exeter property to pay the judgment exceeding $800,000, and he would have to sell the Lemon Cove ranch and be left without a home or assets if, in addition, he is required to pay attorney's fees and sanctions. The trial court did not abuse its discretion giving those speculative arguments little weight, particularly considering Husband's professional skills and entrepreneurial abilities, his cash dealings, and his shifty handling of assets. Considering Husband's ability to pay, in addition to the other factors under section 4320, on this record it was not an abuse of discretion to award Wife nine months' spousal support at $6,000 and $2,600 per month thereafter.

We find Husband's authorities inapposite. In *In re Marriage of Rosen* (2002) 105 Cal.App.4th 808, 824, the spousal support award was reversed because the trial court used an incorrect income figure for the payor spouse. The court's numbers in this case are supported by the record. In *In re Marriage of Lynn* (2002) 101 Cal.App.4th 120, 133, the husband's salary did not cover his basic living expenses and the support award. Here, the court contemplated that Husband would be able to provide for his living expenses through gainful self-employment, and Husband had additional assets from which to draw support if necessary.

In *In re Marriage of Reynolds* (1998) 63 Cal.App.4th 1373, the trial court denied a 67-year-old supporting spouse's motion to terminate support based on that spouse's retirement income and ability to work. The *In re Marriage of Reynolds* court concluded that the trial court had erred by applying a capacity to earn standard instead of

24

recognizing the supporting spouse's timely retirement. (*Id.* at p. 1379.) The appellate court further observed that investment principal should not be available to pay spousal support, especially where the principal is comprised of the supporting spouse's share of community retirement assets divided as part of the marital dissolution. (*Id.* at p. 1380.) But the court also observed that a supporting spouse cannot deliberately shirk support obligations by refusing to work or by prematurely retiring. (*Id.* at p. 1379.) Here, Husband had not reached retirement age, the trial court found he had the ability to be gainfully employed, and it does not appear to have intended that Husband use investment principal to pay spousal support.

### ii. Offsetting Wife's imputed investment income

The income-generating potential of Wife's assets is not relevant to Husband's ability to pay support, and the trial court did not abuse its discretion by not imputing income to the equalizing payment or the assets awarded to Wife under section 1101. The court considered the parties' assets and debts as required under section 4320, subdivision (e). The court found that the "majority of the marital assets are [Husband's] separate property" without encumbrance, that Wife would be "left with minimal personal property," and that "a significant disparity exists between the parties' access to financial resources." Wife's November 2011 schedule of assets showed about $10,000 in liquid assets and $66,000 in debt. There is no showing in the record that the equalizing payment would be available for investment after Wife settled her debts. The remainder of the judgment constituted a penalty award to Wife, and Husband cites no authority requiring the trial court to offset spousal support with income imputed to a penalty attributable to the supporting spouse's wrongful conduct.

Husband's authorities are distinguishable. In *In re Marriage of Ackerman* (2006) 146 Cal.App.4th 191, 211, the court found no abuse of discretion in the trial court's imputing income to the supported spouse's share of the community assets after considering the supported spouse's need to buy a house. In *In re Marriage of Martin*

25

(1991) 229 Cal.App.3d 1196, 1201, the court upheld a spousal support order against the supporting spouse's sufficiency of the evidence challenge. Similar to *In re Marriage of Ackerman*, the trial court in *In re Marriage of Martin* had imputed income to the buy-out received by the supported spouse in exchange for the supporting spouse's retention of the community assets, after considering the supported spouse's stated goal of purchasing a home. (*Id*. at p. 1199.) Neither case holds that the trial court must consider imputed income from an equalizing payment, and in any event the instant case is distinguishable because the court here did not determine that Wife would have income generating assets after paying her debts. In *In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 52–53, the court upheld an order terminating spousal support where the supported spouse had reached retirement age and was able to take distributions from her IRA without penalty. Here, Wife has no retirement assets to draw from.

## D. CHALLENGES TO SECOND STATEMENT OF DECISION

Husband argues that the trial court erred by refusing to consider his current ability to pay any attorney's fees to Wife as of the hearing, by awarding Wife fees exceeding 1.5 times the fees Husband paid his attorneys, and by awarding Wife fees for breach of fiduciary duty claims that she failed to prove. We address each argument in turn.

### 1. The Ability to Pay Determination

Husband argues that the trial court erred by awarding attorney's fees to Wife without making an ability to pay determination. According to Husband, the court made no findings regarding his ability to pay the attorney's fees sanctions award or the need-based fee award, and it "failed to consider and apply the critical section 270 standard and thereby abused its discretion." Section 270 requires "a court order[ing] a party to pay attorney's fees or costs under [the Family] code, [to] first determine that the party has or is reasonably likely to have the ability to pay."[9]

_____

[9] The parties dispute whether the section 270's ability to pay requirement applies to an award of attorney's fees as a sanction under section 1101, subdivision (g). We do

The phase two statement of decision noted the attorney's fees issues were challenging "due to multiple circumstances, including the extensive nature of the litigation at both the pre-trial and trial stages; the overall contentious nature of the litigation which was not conducive to keeping down the cost of attorneys' fees; an unsuccessful interim appeal by Wife that drew criticism from the Court of Appeal regarding attorneys' fees accrued up to that time; Husband's repeated concealment of assets; the parties' inability to reach accord on a multiplicity of issues throughout the course of litigation of the case; the sizeable amount (*an understatement*) of attorneys' fees/costs claimed to have been incurred by the parties—particularly Wife ($1,543,352.11); and the apparent lack of monetary resources available to either party to pay the overall amount of attorneys' fees requested by the parties." In specifically addressing the need-based fee award under section 2030, the court noted the finding made in the first statement of decision and the earlier long-cause order showing a significant financial disparity between the parties. The decision continued, "That being said, however, the amount of attorneys' fees/costs requested by Wife ($1,543,352.11) is not consonant with Husband's financial capacity—particularly in light of the amount of attorneys' fees awarded pursuant to Sections 1101 and 2107." The specific reference to Husband's financial capacity in the statement of decision reflects the trial court's consideration of Husband's ability to pay.

The record contains substantial consideration of Husband's ability to pay. The issue was thoroughly addressed in the parties' two sets of briefing on the issue, and discussed during argument. At the May 2013 hearing, Wife acknowledged that any payments made in satisfaction of the April 2013 order would impact Husband's ability to

not reach that issue because the trial court's ability to pay determination implicitly encompassed the sanctions award. By determining that Husband had the ability to pay a portion of Wife's attorney's fees under section 2030 after it had awarded Wife attorney's fees under sections 1101 and 2107, the court necessarily determined that Husband had, or was reasonably likely to have, the ability to pay the sanctions award.

pay, but pressed that Husband still had $1.3 million remaining. Husband argued that he "has no income. He has unemployment insurance or disability, and that's it. He has no earning capacity." He also argued that as of September 2013 Wife had an earning capacity of $3,000 per month, but his was limited to $1,600 in unemployment compensation. The court recognized that the valuation of farm equipment (a post-trial matter then pending before the all-purpose judge) "could bear on the Court's determination as to ability to pay based upon valuation of the property, but the Court has already addressed valuation of a number of items of property," so the farm equipment valuation would not bear directly on its attorney's fees determination. It acknowledged in its phase two tentative decision that any sanctions award would be relevant to the parties' financial circumstances for purposes of determining a section 2030 fee award.

Husband contends that the court considered outdated information. But the court was aware that Husband had been terminated from employment at the end of 2011, and that he had transferred the Exeter property and the proceeds of an IRA account to Wife in partial satisfaction of the April 2013 accounting order. Although the court ruled at the May 2013 hearing that "new submissions attached to the arguments on attorney's fees and costs are not going to be considered by the Court," Husband did not object to that ruling. Thus, to the extent the trial court did not consider Husband's and Wife's April 2013 income and expense declarations attached to his briefing, Husband has forfeited his right to challenge that ruling on appeal. (*In re S.B*. (2004) 32 Cal.4th 1287, 1293.) Husband also does not show how those declarations would have made a difference given that Husband's declaration showed a decrease in monthly expenses from $8,773 in January 2012 to $3,471 in April 2013, and Wife's declaration showed $188 in average monthly income, far less than the $35,000 annual income imputed to her in the first statement of decision.

In his November 2013 supplemental briefing, Husband provided the court with a chart comparing his financial positions in November 2011 and July 2013. The chart

showed nearly $460,000 in depleted assets independent from the assets transferred to Wife to satisfy the April 2013 order. Wife requested that the court "strike or disregard any and all post-trial alleged facts or assertions made without evidentiary citations," including "information in the pleadings, none of which is verified, none of which is under penalty of perjury[.]" The court responded that it "would certainly not be inclined to consider matters that are outside the evidentiary record," and Husband did not object to that ruling or offer testimony or seek leave to file a verified declaration.

The trial court was within its discretion to find that Husband had the financial capacity to pay the attorney's fees award. The record shows Husband has the ability to earn a living through self-employment. Further, it shows Husband, who had repeatedly concealed assets and liked to deal in cash, holding over $2.1 million in assets at trial. Although Husband claimed a changed financial condition following the trial, the trial court did not abuse its discretion to the extent it rejected Husband's unsubstantiated showing of diminished assets. Considering the undisputed transfer of assets to Wife to satisfy the April 2013 order, the record shows Husband was reasonably likely to have the ability to pay Wife $318,510 as a sanction and an additional $307,485[10] in need-based fees.

### 2. The Section 2030 Need-Based Fee Award

Husband argues that the trial court's need-based attorney's fees award was an abuse of discretion because, when added to the sanctions award, it resulted in him paying Wife 1.5 times ($730,995) the fees that he incurred ($480,558). Husband argues that the purpose of a section 2030 fee award is to ensure parity in the parties' legal representation, and an award of over 1.5 times the amount he paid his attorneys exceeded that parity and constituted an abuse of discretion, particularly in light of the $2.2 million marital estate. He also argues that the court based its finding that the parties had "a disparity in access to

_____

[10] This figure assumes past payments to Wife totaling $105,000 for need-based attorney's fees ordered in 2009 and 2010.

29

funds" under section 2030 on stale information, and that the court did not consider Husband's ability to pay for the legal representation of both parties.

We reject Husband's arguments. The court found that Wife's $318,510 sanctions request was "based on attorney time/efforts associated with discovery, factual investigations, pleadings, and pre-trial and trial efforts relative to proving Husband's breach of fiduciary duty," that the "time/effort that [Wife] attributes to investigating and proving violations of fiduciary duty appear to be reasonable—especially in light of the fact that Husband's violations of fiduciary duty were a dominant part of Wife's case," and that she was entitled to the award "[g]iven Husband's numerous and broad-ranging violations of his fiduciary duty towards Wife[.]" Thus, the $318,510 sanctions award was attributable entirely to Husband's wrongful conduct. The need-based $412,485 award was based on the evidentiary record which showed a significant disparity in the parties' respective income earning capacities, and the recognition that neither party had the ability to pay the overall amount of attorney's fees requested by the parties.

"[T]he proper legal standard for determining a [need-based] attorney fee award requires the trial court to determine how to apportion the cost of the proceedings equitably between the parties under their relative circumstances." (*In re Marriage of Falcone and Fyke* (2012) 203 Cal.App.4th 964, 975.) Section 2032, subdivision (b) states that "[f]inancial resources are only one factor for the court to consider in determining how to apportion the overall costs of the litigation equitably between the parties under their relative circumstances." We will not reverse a need-based award "absent a showing that no judge could reasonably have made the order, considering all of the evidence viewed most favorably in support of the order." (*In re Marriage of Falcone and Fyke*, *supra*, at p. 975.)

After reviewing Wife's attorneys' billing records, the court awarded Wife less than 30 percent of her requested $1.5 million fee award, a reduction reflecting a reasonable exercise of discretion. The record shows Husband serving Wife with the

dissolution petition, deficient disclosures, and a $75,000 marital settlement agreement in February 2009, telling her "it could get very ugly" if she did not sign the agreement. Husband also warned Wife that he would not settle until she "got rid of" her attorneys and that he would "litigate this case until there is nothing – money or assets – left to be divided." Not surprisingly, Wife's attorneys acted aggressively to protect her interests, and it did get ugly. Had Husband been forthright with Wife when he initiated the dissolution, he could have avoided this expensive and burdensome proceeding for the parties and the courts. Husband's exposure under section 2030 is not limited by the total amount of attorney's fees he incurred. Parity here is reflected by Wife's retention of competent counsel. Considering the equities in this case, it was not an abuse of discretion to award Wife attorney's fees under section 2030 that resulted in Husband having to pay Wife 1.5 times the attorney's fees he paid his own counsel.

### 3.    The Section 1101/2107 Sanctions Award

Husband argues that Wife is not entitled to recover attorney's fees for the disclosure violations that did not amount to fiduciary breaches. We agree with Husband that Wife is not entitled to a mandatory fee award under section 1101, subdivision (g) for the fiduciary breaches involving non-disclosure of Husband's separate property and certain community assets that had dissipated before separation since we have determined that those violations did not impair Wife's interest in the community estate under section 1101, subdivision (a). Although those violations cannot support an attorney's fees award under section 1101, subdivision (g), they are independently sanctionable under section 2107, as Husband acknowledges. Husband persists, however, that Wife is not entitled to fees under section 2107 because "[a] section 2107(c) fee award must be in 'an amount sufficient to deter repetition of the conduct or comparable conduct' " and, because the "case is over" so "it is too late for a section 2107(c) fee award to serve the statutory purpose." Husband cites no authority precluding a sanctions award from

31

issuing at the conclusion of trial, and we do not read the statute as limiting sanctions to circumstances in which disclosure obligations still remain.

Section 2107, subdivision (c) provides: "If a party fails to comply with any provision of this chapter, the court shall, in addition to any other remedy provided by law, impose money sanctions against the noncomplying party. Sanctions shall be in an amount sufficient to deter repetition of the conduct or comparable conduct, and shall include reasonable attorney's fees, costs incurred, or both, unless the court finds that the noncomplying party acted with substantial justification or that other circumstances make the imposition of the sanction unjust." Accordingly, Wife is entitled to mandatory sanctions under section 2107, subdivision (c), including an award of reasonable attorney's fees, for Husband's failure to comply with the disclosure requirements, regardless of whether those violations amounted to breaches of fiduciary duty under section 1101.

The trial court found in Wife's favor on 12 of her 16 breach of fiduciary duty claims, and it awarded Wife $318,510 in attorney's fees and $5,737.50 in costs based on proving those breaches. In light of our reversal (at least in part) of four of the trial court's findings, we will remand to the trial court to reexamine those amounts under section 1101, subdivision (g), and section 2107, subdivision (c), in the exercise of its discretion. We express no opinion as to whether any amount should be modified.

### III. DISPOSITION

The May 2013 dissolution judgment is reversed and remanded for the trial court to reduce by $327,357 Wife's section 1101 award for Husband's fiduciary duty breaches, and to reduce the property division equalizing payment owed to Wife by $48,950.

The May 2014 attorney's fees judgment is reversed, and the matter is remanded for the trial court to reexamine the amounts awarded to Wife under section 1101, subdivision (g), and under section 2107, subdivision (c), in light of our determinations regarding the May 2013 judgment.

32

Husband is awarded costs for the appeal from the May 2013 judgment.  Wife is awarded costs for the appeal from the May 2014 judgment.

_____
Grover, J.

**WE CONCUR:**

_____
Rushing, P.J.

_____
Elia, J.

33

| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 6-09-FL-001572 |
|---|---|
| Trial Judge: | Hon. Theodore C. Zayner (lead of three judges) |
| Counsel for Appellant<br>Charles Schleich: | Russell James Hanlon<br>Law Offices of Russell J. Hanlon |
| Counsel for Respondent<br>Lori Holek: | Taline Kizirian Boyamian<br>Boyamian Law, Inc. |

*In re the Marriage of Charles and Lori Schleich / Schleich v Holek*
H039870 and H041234