Filed 10/30/20  Marriage of Taylor CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of JOANNE and RICHARD FORBES TAYLOR. | H045227 (Santa Clara County Super. Ct. No. 2013-6-FL-009857) |
| JOANNE STEWART-TAYLOR, Appellant, v. RICHARD FORBES TAYLOR, Respondent. | |

Following the entry of a judgment of dissolution and the issuance of spousal support orders, the trial court denied appellant Joanne Stewart-Taylor's (Joanne) request for attorney's fees and costs under Family Code section 2030, and granted respondent Richard Forbes Taylor's ("Richard") request for fees and costs under Family Code section 271.  On appeal, Joanne contends the trial court abused its discretion when it issued its order.  We disagree and affirm.

#### I.  FACTUAL AND PROCEDURAL BACKGROUND

Joanne and Richard married in 1984, separated in February 2013, and had their marital status terminated December 31, 2015.

#### A.  Pre-Trial Proceedings

In 2014, Richard filed a motion to appoint a guardian ad litem for Joanne, alleging that Joanne had difficulty participating in the proceedings due to her claimed health

issues. Joanne and her attorneys opposed the request, arguing that she was capable of making decisions. Richard agreed to dismiss his request when Joanne stipulated to an independent medical evaluation and the release of certain of her medical records.

In September 2016, the parties reached an agreement addressing various issues (the September 2016 agreement). Among other terms, they set a $240,000 per year cap on spousal support payable to Joanne by Richard, reserving jurisdiction as to the amount. They agreed each party would pay his or her own attorney's fees and costs through the date of the agreement. The parties elected to retain Elizabeth Strasen (Strasen) to divide the community portion of their retirement accounts. They also agreed each party would receive a distribution from their E-Trade account, they would divide certain investments equally, and Richard would pay Joanne $140,000 to "equalize" all breach of fiduciary duty claims each party had against the other.

The September 2016 agreement required each party to sign any necessary documents to carry out the agreement; the trial court subsequently confirmed that the parties needed to cooperate to complete paperwork necessary to distribute funds from the E-Trade account. Just before the parties signed the September 2016 agreement, Joanne's attorney moved to withdraw as counsel of record. While the motion to withdraw was pending, Joanne's attorney represented her in reaching the September 2016 agreement; Joanne thereafter retained her seventh attorney. The trial court set a trial on all remaining issues for early March 2017 and scheduled a settlement conference to take place before the trial.

In October 2016, Richard filed a declaration with the court indicating he had attempted to obtain the authorization from Joanne necessary to complete the agreed-upon distribution from E-Trade as specified in the September 2016 agreement. He had waited a month for Joanne to sign the required form with no response. He further alleged that Joanne had not contacted Strasen to complete the division of the retirement accounts. Shortly after Richard filed this declaration, the parties stipulated to an additional

2

distribution from the E-Trade account, with an agreement they would cooperate in preparing and signing the instructions required by E-Trade to release the funds. By January 2017, Richard reported to the court that Joanne still had neither paid her share of Strasen's retainer, nor provided the necessary documents to Strasen; the delay was causing the accounts to lose money, as Richard was not able to restructure them. Similarly, he claimed Joanne had not complied with the provision of the September 2016 agreement requiring the parties to equally divide their investments; he alleged Joanne was refusing to respond to "a very simplified agreement to effectuate the division of these investments." Richard additionally alleged that Joanne, rather than attempting to comply with the parties' agreements or address the issues set for trial in March, was "raising new issues and propounding discovery on issues that have already been settled or are inapplicable to the current issues set for trial."

In response to Richard's January 2017 declaration, Joanne informed the trial court that she had health conditions that made it difficult to process information as quickly as other people, thus requiring her to spend more time reading information presented to her in order to comprehend it. She alleged Richard was making the "process" more difficult by misrepresenting facts to the court; she was thus "extremely hesitant" to enter into agreements without verifying information. Given his past breach of fiduciary duties, she worried Richard was attempting to liquidate the E-Trade account without having to pay equalization payments to Joanne, which made her unwilling to take information provided by Richard at "face value."

At a hearing in January 2017, the trial court, after noting that the parties had engaged in "too many" hearings about the E-Trade account since 2014, ordered the parties to divide the remainder of the E-Trade account equally, with Joanne receiving $140,000 from Richard's share, pursuant to the September 2016 agreement. Richard was to prepare the documents required by E-Trade and provide them to Joanne, who was to sign and submit them to E-Trade within seven days of receipt.

3

## B. *Richard's Request for Attorney's Fees as Sanctions*

Joanne's attorney advised Richard's counsel and the judicial officer supervising the scheduled pre-trial settlement conference that Joanne could not productively participate in settlement discussions because of her mental health. Joanne's counsel thereafter notified Richard's attorney that Joanne would be filing a motion to continue the March 2017 trial. In response, Richard filed a request for various orders, including a request for attorney's fees and sanctions under Family Code section 271[1] and Code of Civil Procedure section 128.5. Richard alleged the order/agreement to retain Strasen to divide the retirement accounts and to divide the parties' investments was in place well before the September 2016 agreement. Richard's attorneys had provided Joanne the documents necessary to divide the investments four times, including once after the September 2016 agreement, but Joanne had not executed the documents, paid her share of Strasen's retainer, or returned any of the documents required by Strasen.

Richard further alleged he had provided Joanne's attorneys the signed and notarized forms needed to divide the E-Trade account the day after the court made its order. At first Joanne refused to sign the form because of an erroneous date at the top of one of the forms. Once Richard corrected the problem, Joanne refused to sign because she wanted Richard to notarize every page of the instructions, even those pages that did not require a signature. Richard contended Joanne was simply attempting to stall the division of the account. He asked the court to appoint the clerk of the court or other agent to sign the necessary documents to divide the investments, to sign the Qualified Domestic Relations Orders prepared by Strasen, and to sign the necessary forms to divide the E-Trade account, on Joanne's behalf.

Richard asked the trial court to sanction Joanne "in an amount that represents the portion of [his] attorneys' fees and costs incurred on these issues from September 28,

---

[1] Subsequent statutory references are to the Family Code unless otherwise noted.

4

2016, to current," arguing that Joanne's failure to comply with agreements and court order was "beyond egregious," costing Richard "hundreds of thousands of dollars in unnecessary attorneys' fees and costs." Richard's attorney filed a declaration stating that Richard incurred a "significant amount" of attorney's fees and costs attempting to enforce the agreements and orders, as the attorney's office was required to engage in correspondence, both written and verbal, with Joanne's attorney. Joanne had also propounded discovery related to issues that had already settled. The attorney confirmed he would provide proof of the amounts incurred since September 2016 at the hearing on the motion.

### C. *Joanne's Motion to Continue the Trial*

After obtaining an order shortening time from the court, Joanne filed a motion to continue the March 2017 trial, in which she claimed her mental health was impaired such that she was unable to participate in trial preparation. She alleged she was not able to complete her income and expense declaration (IED), despite making numerous attempts, and had difficulty understanding the terms of settlement agreements the parties had reached, despite spending significant time discussing the terms with her attorneys. At the hearing on her motion, Joanne testified that she was not able to assist her attorney in obtaining information about her health insurance because doing so was "overwhelming" and took too much time. She was similarly unable to provide her medical records because she was paralyzed by fear of releasing them. Although she tried to provide information to her attorneys about a list of concerns she wanted a forensic accountant to address, she was not able to do so; she ultimately declined to retain the expert because she did not feel she had enough information to sign a retainer agreement, despite several months of discussions. Joanne also testified that her mental health made her unable to provide her attorneys with proof of reimbursement claims. The trial court remarked during Joanne's testimony that she seemed to be "very emotionally upset"; she was only able to continue testifying after doing breathing exercises with her attorney. One of

5

Joanne's attorneys provided a declaration detailing the difficulties he had observed in Joanne's ability to assist in preparing her case, noting he had spent many hours conferring with Joanne with minimal results.

Joanne's therapist, Karin Kleiner (Kleiner), provided a declaration in support of Joanne's request to continue the trial, in which she indicated Joanne had suffered post traumatic stress disorder (PTSD) for several years, "the result of her experiences during her marriage and separation from [Richard]." Kleiner opined that the PTSD symptoms made it "very difficult" for Joanne to participate in the preparation of her legal case. Joanne suffered from various medical conditions which exacerbated her PTSD. Kleiner concluded, "Having some time away from dealing with the legal issues and work necessary to prepare her case would give [Joanne] time to consolidate, build resilience, and reduce her stress level enough that she can be effective in preparing her case with her lawyer. Six months would go a long way to help [Joanne] rebuild her reserves."

Kleiner submitted to a deposition in February 2017 that was admitted into evidence.[2] She testified that Joanne was taking a prescribed anxiety medication, the dosage of which was on the "bottom range" and did not impact Joanne's memory. She opined that Joanne was able to obtain her own medical records, live unassisted, pay her own bills, drive her own car, sign a lease, and understand agreements she made in a divorce proceeding. Kleiner further believed Joanne could help her attorneys prepare for trial, "with some support structures." Kleiner indicated that Joanne understood the difference between right and wrong, and did not have "diminished capacity in any way," despite her level of anxiety, meaning she could make decisions for herself and

---

[2] Richard attached a redacted copy of the deposition transcript to his supplemental response to Joanne's motion to continue the trial date. Joanne's attorney objected to the use of the transcript, in part because the time for Kleiner to review and correct it had not yet passed at the time of the hearing on the motion to continue. The court allowed the transcript to be used as evidence without prejudice if Kleiner found any errors or corrections in her review of the transcript.

6

"understands what's presented." Kleiner believed Joanne would have been able to read and understand a document related to the agreement the parties reached in September 2016, as well as a "transfer instruction letter," and a letter from a joint expert to divide retirement accounts. Kleiner did not think it was necessary for the court to appoint a guardian ad litem for Joanne.

At the hearing on the motion to continue, Kleiner further testified that Joanne was not able to perform normal activities easily. She required time to process information. She clarified that Joanne did not have "diminished capacity" in that she was not gravely disabled. She also described actions Joanne could take to manage her symptoms while preparing for trial: Joanne could hire someone to assist her to complete tasks and search for documents and bring a friend to attorney meetings and court proceedings.

The trial court denied Joanne's request to continue the trial. In doing so, it accepted Kleiner's opinion that Joanne suffered from PTSD. However, based on the court's experience with the parties and the case, it found that Joanne was "simply struggling with [the case] coming to finality and [was] not agreeable to taking logical steps that would bring it to finality." The court did not believe that Joanne's resistance to finality of the dissolution proceedings would dissipate in six months. While the court considered granting the continuance motion, which it would have done in combination with sanctions to compensate Richard for the additional preparation he had to do, it decided, "in light of everything here, including the fact that [Joanne is] on her seventh attorney, the amount of fees incurred, the amount of fees to be incurred, there needs to be finality."

## D. Trial Proceedings

The court held the trial as planned in March 2017. Because the trial included Joanne's request for long term spousal support, the parties presented evidence about their finances also relevant to the issue of attorney's fees.

7

Richard had filed an IED in February 2017, in which he claimed just over $48,000 per month in average gross income from his salary, bonuses, and investment income. At trial, Richard clarified that his bonus income was not guaranteed. In his IED, Richard estimated he had $1.4 million in assets, including his separate property and half of the community property. However, of that, $250,000 in stocks and other assets he could "easily sell" was restricted by court order, except for $40,000; the court would not allow access to these accounts without an additional court order. In addition, he claimed $1.1 million in other property, including retirement accounts and restricted stock. Notably, these were to be divided with Joanne pursuant to the September 2016 agreement, but she had not executed the papers necessary to accomplish the agreed upon division.

Richard claimed $32,088 per month in expenses, including, $3,500 in rent, $1,500 per month for entertainment, gifts, and vacation, $8,500 per month in savings and investments, and $11,667 per month in "Legal/Accounting/Specialist Fees." He alleged he had paid his attorneys $493,954 as of the end of 2016. Richard later provided redacted billing statements from his attorney, reflecting $95,552.75 in professional fees and $1,760.15 in costs incurred from September 27, 2016, through February 28, 2017, and $53,182.50 in professional fees, and $3,315.10 in costs incurred in March 2017, the month the trial took place. In a reply brief, Joanne contended that she could not properly evaluate the fees Richard incurred because he redacted the descriptions for each of the items set forth in the billing statements.

Joanne filed an updated IED before the trial. She identified spousal support as her primary source of income, averaging over $16,000 per month, with additional minimal income from dividends/interest. Joanne listed $596,000 in cash assets, and $609,000 in other assets she could easily liquidate. She claimed to have over $31,000 per month in estimated expenses or proposed needs, including: $13,000 for mortgage and property taxes; $2,900 for health care expenses not covered by insurance; $1,000 for clothes;

8

$2,800 for entertainment, gifts, and vacation; $3,000 for savings, and $2,816 for various other expenses.

During the spousal support trial, Joanne testified that her actual expenses were far lower than what she proposed in her IED. She paid $3,765 per month for rent, $250 per year for renter's insurance, and $100 per week for groceries; she testified that many of the amounts she proposed in her IED were amounts she believed she would spend in the future once her health was better, including the amounts proposed for eating out, gifts, entertainment, clothing, education, and travel.

Richard called forensic accountant Lucy Chung (Chung) to testify at the spousal support trial. She opined that Joanne had "substantially more liquid or investable assets than [Richard]."

The trial court ruled on spousal support, making express findings on each of the factors set forth in section 4320. It determined that neither party had the ability to maintain the marital standard of living after dissolution, despite Richard's income and Joanne's assets. Richard's earning capacity, while relatively steady, had seen a downward trend in the previous year; that, as well as Richard's age at the time of trial (57 years-old), led the court to recognize that Richard's income could vary in the seven to eight years before his expected retirement. Given Joanne's liquid assets, which exceeded Richard's, the court determined she did not have to rely solely on spousal support to meet her living expenses; it also indicated its expectation that Joanne would not have to completely deplete her assets in order to do so. The court considered the fact that Joanne "assert[ed] that PTSD has interfered with her employability, as well as her conduct in this litigation," but did not consider it to be an "overwhelming factor," in its decision. Rather, the "crux of [the] case" for the trial court was the balancing of the hardships under section 4320, subdivision (k): "The Court finds based on the testimony of the parties that both parties have very significant financial challenges, particularly given their ages and the looming prospect of retirement. The Court understands that neither party feels

9

financially secure. [Richard] testified and the court considered that his financial plan has been devastated from the date of separation to the present in large part due to the cost of this litigation and the expenditure of more than half of the community's marital assets on litigation expenses. [Joanne] testified and the Court considered that she has anxiety regarding how she will support herself depending on the finite assets she has and the support that she may receive. The Court gave heavy weight to this factor in making its determination regarding long-term spousal support."

Based on its consideration of the section 4320 factors, the trial court ordered Richard to pay Joanne $5,000 per month in base spousal support, plus an additional 30% of Richard's income over his base salary, with an annual cap of $240,000 as stipulated by the parties in the September 2016 agreement.[3]

### E. Attorney's Fees Proceedings

The trial court set forth its findings regarding the section 4320 factors on the record on March 8, 2017. As previously agreed, the parties submitted their initial briefs regarding their attorney's fees requests on April 7, 2017, and reply briefs approximately two weeks later.

Joanne asked the court to order Richard to pay $60,000 in need based attorney's fees under section 2030, "primarily due to the hugely pronounced disparity in [the parties'] respective earning potential." Richard opposed the request, arguing there was no disparity in the parties' access to funds to pay for counsel as Joanne's liquid, non-retirement assets far exceeded his own; in a reply declaration, he estimated his liquid, non-retirement net worth was $215,883.64, while Joanne's was $1,086,885.58.

---

[3] The court also resolved various reserved issues later incorporated into the judgment including outstanding property division disputes, adoption of various agreements reached by the parties, and the characterization of Richard's restricted stock from his employer.

10

Richard reiterated his request for sanctions against Joanne. Richard's attorney provided a declaration in support of the request, indicating Richard had incurred $161,624.60 in attorney's fees and costs since September 27, 2016; the attorney attached redacted billing statements, stating he would provide unredacted copies at the court's request. He then set forth 16 examples of what he believed to be sanctionable conduct on Joanne's part, including her repeated failure to sign the documents needed to divide the parties' investments and E-Trade account, her failure to respond to settlement proposals, her unwillingness to cooperate in efforts to reduce the time of trial, her refusal to allow the parties' financial experts to meet and confer prior to trial, her sudden inclusion of additional issues on the eve of trial without appropriate proof, her failure to provide her IED until the day before trial, her last minute cancellation of the pre-trial settlement conference, the motion to continue the trial, her repeated failure to comply with the trial court's rules and orders, and her refusal to allow the reallocation of stocks within the community retirement accounts. Richard's attorney provided copies of correspondence documenting Richard's efforts to resolve these issues.

On April 10, 2017, Joanne submitted a declaration to the court reiterating her belief that her mental health issues severely impacted her ability to participate in the litigation, claiming that the full extent of her condition was "much worse than the court suspects." She stated that she made her best efforts to assist her attorneys and fully participate in the trial; while there were documents she still needed to sign, she was unable to manage doing so because, "at the same time [she] was trying to do all the other things that [she] was told [she] needed to do for [her] case and cope with daily life." She claimed Richard had not provided evidence of how much he had paid his attorneys in total during the litigation, but she believed she had paid at least double what he had, claiming Richard had "buried" her with unnecessary discovery.

In a declaration filed April 24, 2017, Joanne's attorney notified the court that Joanne entered an in-patient residential treatment program to address her mental health

issues on or about April 19, 2017. Joanne's attorneys did not seek to introduce additional evidence about her mental state prior to the court ruling on attorney's fees.

The parties returned to court in June 2017 to present oral argument and hear the trial court's ruling. Joanne's counsel requested a continuance of the proceedings because his client remained in residential mental health treatment; the court denied the request.

The court issued a tentative ruling before allowing for oral argument: "I understand that [Joanne] has a basis to seek 2030 fees and is making a claim for payment of a substantial amount of her fees, under 2030. [¶] I understand that [Richard] has a number of objections about that, including the comparative assets of each party and the ability to pay. [¶] I also understand that there is a very significant issue that the respondent is raising pursuant to Family Code section 271 as to entitlement of fees based upon conduct of [Joanne] that did not promote settlement or encourage the efficient resolution of issues. [¶] And … I'm fully cognizant -- as I start down this road -- that [Joanne] has issues regarding her mental health and her ability to make decisions that influence all of this. [¶] The fact remains that in the years that I have presided over this case I have seen numerous examples where matters have been prolonged, where [Joanne] has backed out of agreements, where [Joanne] has revisited issues that I thought were settled, and where her conduct has very substantially increased the cost of litigation. [¶] … [¶] I don't expect [Richard] will ever have the opportunity to re-earn what has been, to significant degree, unnecessarily spent on attorneys' fees in this proceeding."

The court confirmed it reviewed all of the billing statements, and found them "reasonable." The trial court denied Joanne's request for section 2030 attorney's fees, and granted Richard's request for sanctions under section 271 in the amount of $75,000. "That doesn't nearly begin to make [Richard] whole, but I think it is a fair and appropriate ruling given the totality of the circumstances here." Consistent with the parties' September 2016 agreement to pay their own attorney bills to that point, the court confirmed that the conduct sanctioned and the fees incurred related to events after that

12

agreement was in effect. The court stated that it was considering Joanne's conduct only, not her motivation or intent, as the basis for the fees award.

After the parties made brief arguments, the court adopted its tentative ruling. During argument, Joanne's attorney did not raise any objection to the trial court considering the redacted billing statements submitted by Richard, and did not ask the court to rule on any such objection made in Joanne's reply brief. Aside from stating that it believed the ruling to be fair and appropriate under the totality of the circumstances, the trial court did not provide any explanation for its denial of Joanne's request for attorney's fees.

The trial court filed and served a written order in conformance with its oral ruling on August 16, 2017, at the same time it entered a judgment on the reserved issues it heard at the March 2017 trial. Joanne timely noticed her appeal of the judgment and the findings and order after hearing addressing the attorney's fees issues.[4] (Code Civ. Proc., § 904.1, subd. (a); Cal. Rules of Court, rule 8.104(a)(1).[5]

## II. DISCUSSION

### A. *Attorney's Fees and Costs under Section 2030*

Section 2030 requires the trial court to ensure that each party in a dissolution proceeding has access to legal representation, "by ordering, if necessary based on the income and needs assessments, one party … to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding."

---

[4] In March 2018, the trial court appointed Dr. Barbara Stewart as Joanne's guardian ad litem. Joanne filed her appellant's opening brief "by and through" Dr. Stewart.

[5] Although the notice of appeal references the judgment and the attorney's fees order, in her opening brief, Joanne alleges only that the trial court erred in denying her request for needs-based attorney's fees, and granting Richard's request for sanctions under section 271. She does not raise any additional issues concerning the orders included in the judgment on reserved issues.

13

(§ 2030, subd. (a)(1).)  When a party requests fees under section 2030, "the court shall make findings on whether an award of attorney's fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties.  If the findings demonstrate disparity in access and ability to pay, the court shall make an order awarding attorney's fees and costs."  (§ 2030, subd. (a)(2).)

We review an order denying fees and costs under section 2030 for abuse of discretion and will not reverse the trial court's order absent a showing that no judge could reasonably have made the order, favorably viewing all evidence in support of the order.  (*In re Schleich* (2017) 8 Cal.App.5th 267, 295; *In re Marriage of Falcone and Fyke* (2012) 203 Cal.App.4th 964, 975.)  However, "the trial court must comply with the mandatory provisions of [section 2030] because discretionary authority 'must be exercised within the confines of the applicable legal principles.'  [Citation.]"  (*In re Marriage of Morton* (2018) 27 Cal.App.5th 1025, 1050 (*Morton*).)

The plain language of section 2030, subdivision (a)(2) states that "the court *shall* make findings" regarding whether the award of needs based attorney's fees and costs is "appropriate," whether there is "a disparity in access to funds" to retain an attorney, and "whether one party is able to pay for legal representation of both parties."  (§ 2030, subd. (a)(2), italics added.)  Interpreting that language, the Fifth District Court of Appeal in *Morton* concluded, "[T]he phrase 'the court shall make findings' requires the court to make express findings—that is, findings stated in words, either in writing or orally on the record.  (§ 2030, subd. (a)(2).)"  (*Morton*, *supra*, 27 Cal.App.5th at p. 1050.)  Here, the trial court issued a lengthy statement of decision addressing the section 4320 factors with respect to its ruling on permanent spousal support, but did not make the express findings required by section 2030, subdivision (a)(2) either orally during the September hearing when it denied Joanne's request for attorney's fees, or in writing as part of the order

14

incorporated into the judgment.  By failing to make the requisite express findings, the trial court erred.

Yet, the court's error does not warrant automatic reversal; Joanne must demonstrate the error was prejudicial.  "The next legal question presented is whether the failure to make explicit findings on the three questions set forth in the statute warrants automatic reversal or, alternatively, whether the appellant must establish the error was prejudicial.  We conclude California's constitutional doctrine of reversible error applies and requires the appellant to establish prejudice.  (Cal. Const., art. VI, § 13.)  An appellant in a civil case establishes an error was prejudicial by showing there is 'a reasonable probability that in the absence of the error, a result more favorable to the appealing party would have been reached.'  [Citation.]" (*Morton*, *supra*, 27 Cal.App.5th at p. 1051.)

While the trial court did not explicitly address the findings required by section 2030, subdivision (a)(2), the statements it made on the record when it ruled on permanent spousal support indicate that there is not a reasonable probability Joanne would have obtained a more favorable ruling had the court expressly made those findings.  The trial court addressed each of the circumstances listed in section 4320—statutory factors the trial court must consider and weigh in ordering long-term spousal support, " 'with the goal of accomplishing substantial justice for the parties in the case before it.'  [Citation.]" (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 304, as modified on denial of reh'g (Oct. 12, 2001).)  These factors are the same the court considers when deciding whether to award attorney fees under section 2030.  Section 2032, subdivision (a) provides that the court may award attorney's fees under 2030 "where the making of the award, and the amount of the award, are just and reasonable under the relative circumstances of the parties."  The court should enable "each party, to the extent practical, to have sufficient financial resources to present the party's case adequately, taking into consideration, to the extent relevant, the circumstances of the respective

15

parties described in Section 4320." (§ 2032, subd. (b).) Those circumstances include "[t]he extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage…" (§ 4320, subd. (a)), the earned and unearned income, assets and standard of living of the party paying spousal support (§ 4320, subd. (c)), the needs of each party based on the standard of living during the marriage (§ 4320, subd. (d)), the "obligations and assets… of each party" (§ 4320, subd. (e)), and "the balance of the hardships to each party" (§ 4320, subd. (k)).

Here, the trial court reviewed the income and expense declarations of the parties and heard their testimony regarding their financial circumstances in the hearing regarding spousal support that immediately preceded its consideration of Joanne's request for an award of section 2030 attorney's fees. As neither party presented additional financial information in support of their respective attorney's fees requests, they clearly contemplated that the evidence adduced at the support hearing would also be considered by the court in its decision to grant or deny their requests for fees; Joanne specifically referenced the trial court's findings regarding spousal support as setting forth the parties' relative financial circumstances.

At the spousal support hearing, the court recognized that neither party had the ability to maintain the marital standard of living, but found that Joanne had significant resources separate from spousal support to pay for her needs. The court indicated that both parties were approaching retirement age with financial challenges and some insecurity, and that Richard's income had declined in the year before the court hearing. The trial court noted that the costs of the dissolution litigation had expended more than half of the community's marital assets. While Richard had greater present income than Joanne, the court concluded, supported by the expert opinion of the forensic accountant, that Joanne had greater liquid or investable assets than Richard. There was thus no appreciable disparity in the parties' ability to access funds to retain counsel. The court can deny needs-based fees where the parties have relatively equal financial

16

circumstances, taking all things into account. (*In re Marriage of Winternitz* (2015) 235 Cal.App.4th 644, 658.) In its contemporaneous ruling on spousal support, the trial court carefully considered in detail the relative financial circumstances of the parties. When it denied Joanne's request for attorney's fees under section 2030, it implicitly determined how equitably to apportion the litigation costs between the parties. Joanne thus has not shown a reasonable probability that she would have obtained a more favorable ruling had the trial court made the express findings under section 2030, subdivision (a)(2).

Joanne contends that the trial court abused its discretion by considering spousal support she received from Richard as funds available to pay attorney's fees. Generally, the trial court should not consider spousal support as being available for attorney's fees and costs. "A support award is made to defray support expenses, and should not be considered in determining financial ability to maintain a proceeding. [Citations.] An exception might be appropriate if the amount of temporary support was sufficient, after payment of the living expenses of [the supported spouse and any supported children], for [the supported spouse] to pay her own attorney fees and costs." (*In re Marriage of Hatch* (1985) 169 Cal.App.3d 1213, 1220; accord *In re Marriage of Pearson* (2018) 21 Cal.App.5th 218, 233, as modified on denial of reh'g (Mar. 27, 2018) ["even in the context of a financial need analysis pursuant to section 4320, there may be an exception where support is sufficient to allow the party to spend funds in addition to covering their basic needs"].) But contrary to Joanne's contention, there is no evidence the trial court considered the spousal support Joanne received from Richard when it evaluated whether she had need for an award under section 2030. At the support hearing, the court focused on the relative liquid assets each party possessed. Joanne also cites no legal authority precluding the trial court from considering the effect paying spousal support had on Richard's ability to contribute to Joanne's fees and costs.

Joanne suggests this court must imply from the trial court's statement, "I understand that [Joanne] has a basis to seek 2030 fees and is making a claim for payment

17

of a substantial amount of her fees, under 2030…," that the court found she did have need for an award under section 2030.  Viewing the statement in context, there is no support for her contention.  The court was summarizing its understanding of the parties' positions rather than making a specific finding as to the viability of Joanne's request for needs-based attorney's fees.  As Joanne has not shown the trial court abused its discretion when it denied her request for needs-based attorney's fees, we affirm that order.

### B.  Attorney's Fees and Costs under Section 271[6]

Section 271 allows the trial court to "base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys."  (§ 271, subd. (a).)  While described as being in the "nature of a sanction," the amount the trial court can award is limited to actual attorney's fees and costs, meaning the amount must bear some relationship to the moving party's attorney's fees and costs.  (§ 271, subd. (a); *Sagonowsky v. Kekoa* (2016) 6 Cal.App.5th 1142, 1156 (*Sagonowsky*).)  As with a request for needs-based fees and costs, we review an order under section 271 for abuse of discretion, overturning the order "only if, considering all of the evidence viewed most favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order.  [Citations.]"  (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1225-1226.)

Joanne argues the trial court abused its discretion in finding that she engaged in sanctionable conduct under section 271 because any such conduct was unintentional, and the result of her mental health condition.  We do not agree with Joanne's assertion that a party's intent determines whether an attorney's fee sanction is properly issued by the trial

---

[6] Although Richard also cited Code of Civil Procedure section 128.5 in support of his request for sanctions, on appeal the parties only discuss the applicability of section 271, which was clearly the crux of Richard's request.

18

court.  The plain language of the statute requires the trial court to base an award

attorney's fees "on the extent to which the *conduct* of each party or attorney furthers or

frustrates the policy of the law to promote settlement of litigation and, where possible, to

reduce the cost of litigation by encouraging cooperation between the parties and

attorneys."  (§ 271, subd. (a), italics added.)  Joanne does not cite legal authority that

supports her contention that an award under section 271 may be issued by the trial court

only if a party intended to frustrate settlement or cooperation in the litigation process.

Further, section 271 provides the trial court the discretion to order a litigant to pay

attorney's fees as a sanction based solely on the conduct of that litigant's attorney.  (See

§ 271, subd. (a).)  The Legislature's inclusion of this option further clarifies that the

statute does not require a party to intend to engage in sanctionable conduct for an award

of attorney's fees to be issued by the trial court as a sanction.  Not every client

understands the significance of the litigation techniques employed by an attorney who

thwarts opportunities for agreement or who drives up the costs of litigation with costly

yet unproductive discovery requests.  Nonetheless, the Legislature chose statutory

language that permits the trial court to allocate the cost of that attorney's behavior as a

sanction on the client, without any requirement that the court find that the client shared

the attorney's intent, or even knowingly authorized the conduct.

We are cognizant, as was the trial court, that Joanne suffers from a mental health

condition.  The difficult issue before the trial court was the proper balance between the

just treatment of a party who had mental illness, and the opposing party whose assets

available for retirement were significantly reduced by delays in reaching finality.  It is the

policy of the justice system to provide protection and assistance to litigants suffering

from health issues, whether physical or mental.  (See Cal. Rules of Court, rule 1.100(b).)[7]

Under rule 1.100, parties can seek accommodations from the trial court, pursuant to the

---

[7] Subsequent references to rules of court are to the California Rules of Court.

19

Americans With Disabilities Act of 1990 (ADA) (42 U.S.C. § 12101 et seq.), or other applicable state and federal laws. Alternatively, a party can participate in the litigation through a guardian ad litem. (Code Civ. Proc., § 372 et seq.) But Joanne did not take advantage of these protections although they were available to her.

The parties each rely on *In re Marriage of James & Christine C.* (2008) 158 Cal.App.4th 1261 (*Christine C.*), a case in which the appellate court reversed a trial court order denying a self-represented litigant's request for an ADA accommodation to continue a dissolution trial. The case is easily distinguished from the facts before us because Joanne did not formally request an accommodation under rule 1.100. However, the appellate court's discussion of how to prevent further continuances after granting the accommodation is relevant here. "The question remains of what to do to prevent this scenario from recurring, to ensure the parties' justified needs are met, and to resolve the matter justly and expeditiously. One possible solution is to make sure [the party requiring accommodation] is represented by counsel. … A pendente lite needs-based attorney fees award to [that party] under Family Code section 2030 might be justified under the circumstances. Also, depending on [the party's] condition, it might be necessary to address again the issue of appointing a guardian ad litem. These options are not an exclusive list of possible future actions." (*Id*. at p. 1277.)

While in *Christine C.*, the party seeking accommodation was unable to afford an attorney (*id*. at p. 1268), here Joanne had adequate funds to retain counsel throughout the proceedings. She opposed Richard's request to appoint a guardian ad litem for her in 2014. At the hearing on her motion to continue in March 2017, Joanne's therapist opined that a guardian ad litem was not necessary; Joanne did not want someone appointed in that role. At the hearing on the motion to continue, Joanne's attorney raised for the first time the possibility that Joanne qualified for accommodations under the ADA, but there is no evidence in the record that Joanne properly applied for, or proved the need for, such accommodations. Nor is there evidence that she adopted the recommendations suggested

20

by her therapist to ease her experience of the family court litigation, including hiring a person to collect documents and help her with tasks assigned by her attorneys, and bringing a support person to court with her. Joanne had the opportunity to take advantage of protections afforded to parties suffering from health limitations, including those suffering from mental health conditions, and failed to do so until after Richard had incurred unnecessary attorney's fees and costs as a result of her conduct.

We conclude there was sufficient evidence for the court to find Joanne's conduct violated the policy of the law to promote settlement of litigation and reduction of litigation costs. Richard and his attorney provided detailed information about the amount of time counsel spent attempting to obtain Joanne's compliance with the parties' agreements and the trial court's orders. The trial court noted that absent the court's intervention Richard would never recover the funds that he expended on unnecessary attorney's fees and costs resulting from the delays she caused by refusing to move forward toward a final judgment over a three year period—even so, the award under section 271 provided only partial compensation for the financial loss he incurred. Joanne's conduct frustrated the policies set forth in the statute, thus forming a sufficient basis for the trial court to order attorney's fees as sanctions to offset Richard's expenditures.

Joanne contends the trial court erred in awarding $75,000 in sanctions without sufficient proof that the sanctionable conduct caused those fees. Specifically, she argues Richard submitted redacted billing statements from his attorney, making it impossible to correlate specific instances of alleged sanctionable conduct with particular fees. Richard argues that Joanne waived this issue at trial, as she did not object to the billing statements. Joanne did raise a concern about the redactions in her reply brief, filed prior

21

to the hearing on attorney's fees.[8]  While her attorney did not restate this objection during the hearing, we need not determine whether Joanne forfeited this argument, as there was sufficient evidence in the record for the trial court to determine the appropriate amount of sanctions despite the redacted billing statements.

"We review the court's findings for substantial evidence, [citation], and we consider all the evidence and view it favorably to support the court's order [citation]." (*Menezes v. McDaniel* (2019) 44 Cal.App.5th 340, 350.)  Richard's attorney provided a detailed declaration addressing the work he and his associates generated as a result of Joanne's conduct.  The trial court's award of fees was far less than the total amount Richard incurred in the period at issue.  Richard was not required to establish "with great precision" the amount of fees directly caused by Joanne's conduct, as "misconduct may increase attorney's fees in ways that are indirect and difficult to prove."  (*Sagonowsky*, *supra*, 6 Cal.App.5th at p. 1155.)  The trial court met its duty to review the relevant evidence before ruling on Joanne's request by reviewing the billing records and, presumably, reviewing counsel's associated declaration.  (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1314; see *Mardirossian & Associates, Inc. v. Ersoff* (2007) 153 Cal.App.4th 257, 269 [" 'An attorney's testimony as to the number of hours worked is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records.' "].)

Finally, Joanne argues the award of $75,000 against her imposes on her an "unreasonable financial burden."  (§ 271, subd. (a).)  As already discussed, Joanne has significant liquid assets, such that the amount ordered by the trial court does not impose an "unreasonable" burden on her.  As Joanne has not shown that the trial court abused its

---

[8] In her reply brief, Joanne requested to augment the record on appeal with the reply brief she filed in the trial court.  She thereafter filed a separate motion to augment, which this court granted in an order filed December 9, 2019.

discretion, we affirm the trial court's order that she pay $75,000 in attorney's fees as sanctions under section 271.

### III.    DISPOSITION

The August 16, 2017 order denying Joanne's request for attorney's fees and costs under section 2030 and granting Richard's request for attorney's fees and costs under section 271 is affirmed.

_____
Greenwood, P.J.

WE CONCUR:



_____
Grover, J.






_____
 Danner, J.




Stewart-Taylor v. Taylor
No. H045227