[Civ. No. 33161. Fourth Dist., Div. Two. Oct. 18, 1984.]

In re the Marriage of LYNN M. and PETER G. DORRIS.
LYNN M. DORRIS, Respondent, v.
PETER G. DORRIS, Appellant.

COUNSEL

Dill & Showler and Scott Showler for Appellant.

Tomlinson & Nydam and M. S. Tomlinson for Respondent.

OPINION

**KAUFMAN, J.**—This is an appeal by Peter Dorris, former husband, from an order of the trial court vacating certain portions of an interlocutory judgment of dissolution of marriage. Respondent Lynn M. Dorris will be referred to as former wife.

## Facts

Former husband is an employee of Aramco, and at all relevant times was living and working for Aramco in Saudi Arabia. Former wife petitioned in California for dissolution of the marriage, and in 1981 an interlocutory judgment of dissolution of marriage was granted. Insofar as it is relevant to this appeal, the interlocutory judgment of dissolution provided as follows:

"The Court also orders that petitioner's diamond necklace, which contains a 3½ carat stone, presently in the possession of respondent, is confirmed as petitioner's sole and separate property, and respondent is ordered to return said necklace to petitioner on his next trip from Saudi Arabia.

"The Court also orders that respondent's gold pocket watch and gold chain is confirmed as respondent's sole and separate property.

". . . . . . . . . . . . . . . . . . . . . . .

"The Court also orders that the balance of the community property is divided as follows:

"To the petitioner, as her sole and separate property: [¶] 1. A share of the household furniture, carpets, accessories and silver pieces, except flatware, presently in Saudi Arabia. Respondent shall ship the petitioner's share to her, at his expense, within a reasonable time. . . .

"To the respondent, as his sole and separate property: [¶] 1. A share of the household furniture, carpets, accessories and silver pieces presently in his possession in Saudi Arabia . . . ."

The interlocutory judgment signed April 29, 1981, resulted from an uncontested hearing and was based on a marital settlement agreement prepared by wife's attorney and signed both by former husband and by former wife. The quoted provisions of the interlocutory judgment were derived almost verbatim from provisions in the marital settlement agreement.[1]

On February 23, 1982, approximately 10 months later, former wife had not received any of the personal property from former husband in Saudi

---

[1] The parallel provisions of the marital settlement agreement are as follows: "[¶] SEPARATE PROPERTY: [¶] The parties agree that they are each possessed with certain separate property, which is hereby confirmed to each party: [¶] 1. To the Wife: Diamond necklace, which contains a 3½ carat stone, and is presently in the possession of husband in Saudi Arabia, and he agrees to deliver it to the wife on his next trip from Saudi Arabia; [¶] 2. To the Husband: Gold pocket watch and gold chain. [¶] COMMUNITY PROPERTY: . . . [¶] 5. The Wife shall receive, as her sole and separate property, the following: [¶] a. A share of the household furniture, carpets, accessories and silver pieces, except flatware, presently in Saudi Arabia. Husband agrees to ship the wife's share, at his expense, within a reasonable time. . . . [¶] 6. The Husband shall receive, as his sole and separate property, the following: [¶] a. A share of the household furniture, carpets, accessories and silver pieces presently in Saudi Arabia. . . ."

The marital settlement agreement also included a provision entitled "RELEASE OF RIGHTS" which provided: "1. Except as otherwise provided in this agreement, each party to this agreement does hereby release the other from any and all liabilities, debts or obligations, of every kind or character, heretofore or hereafter incurred, and from any and all claims and demands, it being understood that this present agreement is intended to settle the rights of the parties hereto in all respects."

Arabia. She filed a notice of motion for modification of the interlocutory judgment, raising numerous issues. The portions of the motion relevant to this appeal requested that the interlocutory judgment be modified to add the word "one-half" or the word "equal" immediately preceding the word "share" in those provisions of the judgment awarding "a share" of the furniture, furnishings, etc., to both former wife and former husband. Former wife further requested modification of the provision to specifically set forth the items awarded to each party. With respect to the separate property confirmed to each party, former wife requested modification of the interlocutory judgment to confirm an additional list of numerous items of jewelry as former wife's separate property.

Various other issues raised by the motion were disposed of by stipulation. Also pursuant to stipulation of the parties the court continued the matter for further hearing on the issues of the meaning of the term "a share" as used in the interlocutory judgment, the question of delivery to former wife of her "share," and former wife's request to confirm as her separate property the additional items of jewelry enumerated by her.[2]

Following a hearing on December 15, 1982, the court announced its decision. A formal order was entered on August 23, 1983. In the order the court, purporting to exercise equitable powers, interpreted the motion for modification as a motion to vacate portions of the interlocutory judgment, found the term "a share" in the interlocutory judgment in the provisions relating to the division of household furniture, carpets, accessories and silver pieces (hereafter the community personal property) to be patently ambiguous, and ordered those paragraphs of the interlocutory judgment vacated. The disposition of those items of community personal property were ordered relitigated. The trial court found the separate property confirmation of the diamond necklace to former wife and the gold pocket watch and chain to former husband did not imply any exclusivity, that is, there was no implication that additional separate property did not exist, and that the parties could also litigate in the family law action the question of whether additional separate personal property of each party should not be confirmed by further judgment of the court.

Former husband argues it was improper for the court to vacate portions of the interlocutory judgment because of ambiguity in the term "a share." He further urges it was error to set aside those provisions in the judgment regarding the separate property confirmed to each party.

[2]The stipulation provided in pertinent part: "This matter[,] including the property issues which each party stipulates may be included[,] is continued to Sept. 20, 1982 . . . for further hearing on . . . (1) F[-]Share defined[,] G-Delivery[,] H-Confirmation of sep. prop. and attorney's fees."

*Discussion*

## 1. *"Share" Defined*

The trial court was correct in pointing out that the term "a share" of the community personal property was patently ambiguous. The court erred, however, in treating the motion as one to vacate the provisions in the interlocutory judgment using that term and in setting aside those portions of the judgment.

Former wife filed her motion on February 23, 1982, more than six months after the date of entry of the interlocutory judgment. The time for appeal from the interlocutory judgment had passed. (Cal. Rules of Court, rule 2.) A motion for relief pursuant to Code of Civil Procedure section 473 must be made within six months, so former wife was also precluded from seeking relief under that statute.

In the absence of the availability of statutory relief, it was incumbent upon former wife to show equitable circumstances sufficient to justify setting aside the valid final judgment. (*Kulchar* v. *Kulchar* (1969) 1 Cal.3d 467 [82 Cal.Rptr. 489, 462 P.2d 17, 39 A.L.R.3d 1368].) Former wife was required to demonstrate grounds either of extrinsic fraud or extrinsic mistake in order to justify relief from the judgment. No ground of fraud was even alleged in former wife's moving papers, and the only possible mistake appearing was the ambiguity in the meaning of the term "a share" of the personal property. The property settlement agreement upon which the judgment was based contained the very same "a share" language found in the judgment. (See fn. 1, *ante.*) The marital settlement agreement was prepared by former wife's attorney, and signed by both parties. The ambiguity in the term "a share" was patent, both at the time the marital settlement agreement was executed and at the time the interlocutory judgment was rendered. Thus, the mistake, if any, was plainly not extrinsic and did not prevent former wife from appearing and presenting her claim.

Although, "[t]he right to relief has also been extended to cases involving extrinsic mistake[,] . . . [r]elief is denied, however, if a party has been given notice of an action and has not been prevented from participating therein. He has had an opportunity to present his case to the court and to protect himself from mistake or from any fraud attempted by his adversary." (*Kulchar* v. *Kulchar, supra,* 1 Cal.3d 467, 471-472.)

No valid ground to justify setting aside the judgment appearing, the court's order vacating and setting aside those portions of the judgment awarding each party "a share" of the personal property must be reversed.

That is not to say, however, that former wife is not entitled to any relief. Although her order to show cause purported to seek a "modification," it was clearly directed at having the court construe what was meant in the judgment by the use of the term "a share" and obtaining appropriate enforcement by the court of the delivery to former wife of whatever was her "share." That she was entitled to, as former husband apparently now concedes. Former husband contends that he has delivered to wife all that she is entitled to and that former wife has released him from all other claims in the marital settlement agreement, but the resolution of those contentions will depend on what the court determines was meant by "a share" and its determination of what has been delivered to former wife and its proportionate value to whatever was retained by former husband. Those matters could have and should have been determined by the court on the order to show cause and there was no necessity for vacating the portions of the judgment awarding to each spouse "a share" of the community personal property in dispute.

## 2. *The Separate Property Items*

 Former husband contends the trial court could not properly set aside those portions of the interlocutory judgment confirming the diamond necklace as former wife's sole and separate property and the gold watch and chain as his sole and separate property in the absence of fraud or breach of the confidential relationship between the parties. In so arguing, former husband has mistaken the effect of the trial court's order.

At the hearing on the order to show cause the trial court expressly declined to set aside the separate property portion of the judgment. The final order of the court simply found "that the confirmation of a diamond necklace to Petitioner as her separate property and a gold pocket watch and gold chain to Respondent as his separate property does not imply any exclusivity, i.e., no inference may be drawn that there does not exist additional separate property of the parties which should be confirmed to each." It was then ordered that in conjunction with the further proceedings concerning the community personal property, the court could also consider the question of whether additional separate personal property of the parties existed which should be confirmed to each of them. Thus, the court did not vacate or set aside the portions of the judgment relating to the diamond necklace and the gold watch and chain.

However, the court's order that the question of additional separate personal property of the parties could be litigated in conjunction with the hearing on the interpretation and enforcement of the provisions dividing the

community personal property gives rise to another problem: it appears to be in excess of the jurisdiction of the court.

■ It is well established that the family law court has no jurisdiction in dissolution of marriage proceedings to dispose of either party's separate property. (*Reid* v. *Reid* (1896) 112 Cal. 274, 277 [44 P. 564]; *Porter* v. *Superior Court* (1977) 73 Cal.App.3d 793, 803 [141 Cal.Rptr. 59], and cases there cited.) The court does have jurisdiction, of course, to determine whether or not a given piece of property is community property or separate property (*Kirsch* v. *Kirsch* (1896) 113 Cal. 56, 63 [45 P. 164]; *Porter* v. *Superior Court, supra*), and it is undoubtedly the exercise of that jurisdiction that has given rise to the practice of confirming to the respective spouses their separate property in judgments of dissolution. The practice is a desirable one because it tends to settle titles and avoid disputes and further litigation.

■ However, it is now settled that once a judgment distributing the marital property has become final, any dispute concerning marital property not disposed of in the judgment must be resolved by separate action. (*Henn* v. *Henn* (1980) 26 Cal.3d 323, 332 [161 Cal.Rptr. 502, 605 P.2d 10], and cases there cited.) One reason for this rule is that in a legal sense after the rendition of a final judgment of dissolution disposing of the marital property, there can be no such thing as any remaining community property because as to any community property undisposed of by the judgment the parties ipso facto become joint owners as tenants in common. (See *Henn* v. *Henn, supra*, 26 Cal.3d at p. 330; *In re Marriage of Brown* (1976) 15 Cal.3d 838, 850-851 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164]; *In re Marriage of Elkins* (1972) 28 Cal.App.3d 899, 903 [105 Cal.Rptr. 59].) In other words, any property left undisposed by the judgment is either the separate property of one party or the other or the separate property of both parties and is outside the jurisdiction of the family law court. That is by necessity true of the numerous items of allegedly separate personal property enumerated by former wife in her order to show cause, and the court's order purporting to authorize adjudication of the title to that property on the further hearing concerning the interpretation and enforcement of the judgment was perforce in excess of jurisdiction.

We hasten to observe, however, that both parties appear to have stipulated to the adjudication in this proceeding of title to the allegedly separate personal property enumerated by former wife. (See fn. 2, *ante*.) While it is the general rule that parties may not confer subject matter jurisdiction on a court by agreement or stipulation (*Sampsell* v. *Superior Court* (1948) 32 Cal.2d 763, 776 [197 P.2d 739]; see 1 Witkin, Cal. Procedure (2d ed. 1970) Jurisdiction, § 10, pp. 534-536, and cases there cited), an exception to the

general rule is recognized "[w]here subject matter jurisdiction did exist at the commencement of the action, and the problem is merely one of continuing jurisdiction." (1 Witkin, Cal. Procedure (2d ed. 1970) Jurisdiction, § 12, p. 538; cf. *Sampsell* v. *Superior Court, supra,* 32 Cal.2d at p. 776; *Maloney* v. *Maloney* (1944) 67 Cal.App.2d 278, 280 [154 P.2d 426].) Here, of course, by virtue of its jurisdiction to determine which property was community and which separate, the court originally could have determined the enumerated items of property to be the separate property of former wife and confirmed them unto her. Thus, the problem would appear to be one of continuing jurisdiction as to which the consent of both parties would preclude either of them from asserting a lack of jurisdiction in the future should the court proceed to adjudicate title to this property in accordance with their stipulation. (*Id.*)

### Disposition

The order appealed from is reversed for further proceedings consistent with this opinion. In the interests of justice the parties shall bear their own respective costs on appeal.

Morris, P. J., and Rickles, J., concurred.