Filed 11/14/22 Marriage of Matkovic CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re Marriage of KATE and PETER MATKOVIC. | H047406 <br> (Santa Clara County <br> Super. Ct. No. 2013-6-FL-009652) |
| KATE MATKOVIC, <br><br>     Appellant, <br><br>     v. <br><br> PETER MATKOVIC, <br><br>     Respondent. | |

In this dissolution appeal, appellant advances several challenges to the trial court's award to respondent of her one-half interest (valued at approximately $500,000) in a community home as a remedy under Family Code section 1101, subdivision (g), for misappropriating $520,000 in community funds during the marriage. In addition, appellant challenges the trial court's imposition of attorney fees, expert costs, and a $200,000 monetary sanction under Family Code section 2107, subdivision (c), for disclosure violations in the underlying proceeding. She also challenges the family court's denial of her request for attorney fees under Family Code section 271, and asserts a failure to confirm as her separate property a home she purchased with postseparation earnings.

As we will explain, the family court incorrectly found that respondent's one-half interest in the community estate was impaired in its entirety by appellant's preseparation fiduciary breaches. Respondent failed to establish that he was impaired by appellant's March 2011 $250,000 loan and May 2012 $95,125 gift to the parties' daughter. Of the remaining $174,875 appellant was found to have misappropriated in breach of her fiduciary duties, the trial court lacked authority under Family Code section 1101, subdivision (g) to award respondent more than his community interest in those funds ($87,437.50). We see no error related to appellant's other contentions, but will remand the matter for the family court to remedy the errors under Family Code section 1101, subdivision (g).

## I. BACKGROUND

Kate and Peter married in 1985.[1] They emigrated to the United States from Croatia, had three children (Ivan born in 1986, Magdalena in 1988, and Andrej in 1995), and operated a successful Silicon Valley manufacturing business (Accura Precision, Inc.) for nearly 25 years before separating in July 2012. Peter managed Accura's business operations and Kate handled the company's finances as well as the parties' personal finances.

The parties acquired several properties during the marriage including a primary residence in Cupertino, commercial and rental properties in the Bay Area, and a home in Croatia. They also helped Ivan start his own company (Spendgo, Inc.) and helped Ivan and Magdalena purchase real estate.

When the parties separated in July 2012, they executed a transmutation agreement related to their real property in California, and they transferred ownership of their company to Ivan and Magdalena. The parties also gifted their children large sums of money, of which approximately $2.5 million was documented in gift declarations

---

[1] We refer to the parties and their adult children by their given names for clarity, intending no familiarity or disrespect.

2

executed at the time of separation. Many of those cash gifts were made by Kate with community funds she transferred from joint bank accounts to an individual checking account she opened in 2010.

Kate returned to work at Accura after the ownership change. The company was struggling, and Kate was instrumental in guiding its recovery. In 2013, Kate and Ivan agreed she would receive as compensation "whatever was left" after Accura met its obligations. Unbeknownst to Peter, Kate was compensated over $6.1 million between 2013 and 2016, an amount comparable to the parties' joint earnings during the four years preceding the ownership transfer.

Kate petitioned for dissolution in January 2013. Peter hired an accounting firm to trace preseparation community income and disbursements, and in 2015 Kate engaged an expert to rebut the conclusions of Peter's expert regarding the preseparation activity. In 2017, Peter's expert investigated Kate's postseparation receipt of funds from Accura.

Peter moved to Croatia in 2014, where he opened a restaurant in 2016. The marriage was dissolved in 2017, and a nine-day trial on contested issues was held in February 2018.

## II. TRIAL COURT PROCEEDINGS

Peter alleged Kate breached her fiduciary duties during the marriage by knowingly and willingly receiving $599,465 more funds than he received from the community between January 1, 2010 and July 15, 2012. He also alleged a fiduciary breach after separation by Kate fraudulently receiving $6.13 million from the family business, despite the parties' agreement to divest themselves of their ownership interest in the company. He sought 100 percent of the appropriated assets under Family Code section 1101, subdivision (h). (Undesignated statutory references are to the Family Code.) He sought sanctions, attorney fees, and costs for Kate's disclosure violations under sections 271 and 2107. He argued that a judgment in his favor should be satisfied with Kate's transmuted properties.

3

Kate claimed Peter breached his fiduciary duty by maintaining an apartment for a girlfriend during the marriage with community funds. She sought enforcement of the transmutation agreement; an equalizing payment ($501,500) for her one-half interest in the community home in Croatia; reimbursement for Peter's exclusive use of the Croatia residence postseparation; and confirmation as separate property the house she purchased in Croatia in 2016.

The family court heard testimony and received evidence from the parties, their accounting experts, and their children Ivan and Magdalena. In a partial proposed statement of decision, the court upheld the transmutation agreement. It found Kate did not breach her fiduciary duty to Peter by converting $599,465 of community funds to her own use, but of that amount found that Kate breached her duty to disclose transfers of $500,000 to Magdalena and $20,000 to Ivan. The court found Peter was not entitled to exemplary damages because Kate's fiduciary breaches did not involve oppression, fraud, or malice. It found Kate failed to prove that Peter breached his fiduciary duty by spending money on a girlfriend during the marriage. The court divided equally the community's liquid assets ($85,000 held by Kate and $2,000 held by Peter).

The court found that Kate did not breach her fiduciary duty by receiving $6.1 million in earnings from Accura between 2013 and 2016, but that she breached her duty to disclose those earnings in the dissolution proceeding. Kate also breached her duty to disclose her 2016 real estate purchase, albeit with separate funds. The court concluded the disclosure violations warranted sanctions, but not exemplary damages.

After further briefing and argument regarding sanctions, the family court issued a proposed statement of decision and decision in which it awarded Kate's interest in the community home in Croatia to Peter under section 1101, subdivision (g) based on Kate's failure to disclose the $520,000 she transferred to the children. The court proposed sanctioning Kate under section 2107, subdivision (c) for failing to disclose her postseparation Accura earnings by awarding Peter $70,000 in attorney fees, $3,000 in

4

costs, $69,064 in expert fees, and an additional $400,000 to deter repetitive conduct. Other than the attorney fees awarded to Peter under section 2107, the proposed decision declined to award to either party attorney fees whether as a sanction under section 271 or as a prevailing party.

After considering the parties' objections, the court modified its proposed decision and issued a 40-page statement of decision and judgment in August 2019. Specifically, the court subjected Peter's award of the community home in Croatia to a reimbursement claim by Kate for his postseparation use of the home; considered Kate's nondisclosure of her 2016 real estate purchase in ordering sanctions under section 2107; adjusted the expert fees to $220,952 (the amount incurred by Peter's experts before and during trial); and reduced the deterrence sanction from $400,000 to $200,000, recognizing that both parties contributed to prolonging the litigation. In total, Kate was sanctioned $493,952 in addition to her interest in the community home in Croatia.

### III. DISCUSSION

We review the division of community property and imposition of sanctions in dissolution proceedings for abuse of discretion. (*In re Marriage of Schleich* (2017) 8 Cal.App.5th 267, 276 (*Schleich*).) We review questions of law presented on undisputed facts de novo. (*In re Marriage of Blazer* (2009) 176 Cal.App.4th 1438, 1443.) And we apply an independent standard of review to questions of statutory interpretation. (*People v. Johnson* (2007) 150 Cal.App.4th 1467, 1481.)

### A. "VALUE OF THE ASSET" REMEDY

Section 721 recognizes the fiduciary relationship in transactions between spouses. The relationship includes "a duty of the highest good faith and fair dealing on each spouse," and mandates that "neither [spouse] shall take any unfair advantage of the other." (§ 721, subd. (b).) The relationship applies to the management and control of community assets and liabilities during marriage. (§ 1100, subd. (e).) This duty includes the obligation to fully disclose to the other spouse "all material facts and information

5

regarding the existence, characterization, and valuation of all assets in which the community has or may have an interest and debts for which the community is or may be liable, and to provide equal access to all information, records, and books that pertain to the value and character of those assets and debts, upon request." (*Ibid.*)

Section 1101 creates a right of action for a spouse's breach of fiduciary duty if it "results in impairment to the claimant spouse's present undivided one-half interest in the community estate." (§ 1101, subd. (a); *In re Marriage of Prentis-Margulis & Margulis* (2011) 198 Cal.App.4th 1252, 1270.) Subdivisions (b), (c), (g), and (h) of section 1101 provide remedies for a spouse's breach of fiduciary duty. Under subdivision (b), the court may determine the rights of ownership in community property and classify all property of the parties to a marriage. Under subdivision (c), a court may order that a spouse's name be added to community property held by the other spouse. Subdivision (g), applied by the trial court here, states: "Remedies for breach of the fiduciary duty by one spouse, including those set out in Sections 721 and 1100, shall include, but not be limited to, an award to the other spouse of 50 percent, or an amount equal to 50 percent, of any asset undisclosed or transferred in breach of the fiduciary duty plus attorney's fees and court costs." When the breach constitutes fraud, oppression, or malice, the remedy "shall include, but not be limited to, an award to the other spouse of 100 percent, or an amount equal to 100 percent, of any asset undisclosed or transferred in breach of the fiduciary duty." (§ 1101, subd. (h).)

In December 2010, Kate opened a checking account and began transferring community funds to that account. From the account, Kate wrote a $250,000 check to Magdalena on March 4, 2011, a $250,000 check to Magdalena on May 22, 2012, and a $20,000 check to Ivan on March 7, 2012. The court found Kate breached her fiduciary duty under section 1100, subdivision (e) by not disclosing those transfers, "because it is clear that [Peter] wanted to be kept appraised of the financial dealings of the parties, particularly when the relationship between them began disintegrating, and made repeated

6

requests for copies of documents during the marriage which were not voluntarily produced by [Kate] to [Peter] or his attorney." The court found Kate's interest in the community home in Croatia to be an appropriate monetary sanction for the disclosure violation under section 1101, subdivision (g). Although Kate's interest in the home (approximately $500,000) exceeded $260,000 (50 percent of the undisclosed transfers), the court found the award to be within its discretion under section 1101, subdivision (g).[2]

### 1. Kate's Breach of Fiduciary Duty

Kate argues the family court erred by not making a finding under section 1101, subdivision (a) that Peter's community interest was impaired by her transfer of community funds (which she characterizes as loans) to the children. She argues Peter's interest was not impaired because he had ceded control of the community finances to Kate, and the loans were consistent with his desire to help the children. The trial court is not required to make an express finding of impairment under subdivision (a). Kate's authority, *In re Marriage of Sharples* (2014) 223 Cal.App.4th 160, 165, is inapposite as it

---

[2] At oral argument Peter noted a "calculation error" in his brief and, contrary to his briefing, advanced for the first time the position that Kate was not sanctioned under section 1101, subdivision (g) for transferring $520,000 in community funds to the children, but was actually sanctioned for "the failure to disclose and account for the $599,465 she had received" which belonged to the community estate, and that the sanction was reflected in the court not ordering a payment from Peter to Kate of approximately $244,000 (equalizing Kate's receipt of the converted funds and the award to Peter of the community residence in Croatia valued at approximately $1.3 million). We cannot reconcile Peter's interpretation with the family court's final statement of decision, in which it specifically found "that Kate <u>did not</u> breach her fiduciary duty to Peter by wrongfully, and without Peter's knowledge converting $599,465 to her own use, but does find that Kate breached her fiduciary duty, pursuant to Family Code section 1101(e) [*sic*] by not fully disclosing the two $250,000.00 'loans' to Magdalena and the $20,000.00 'loan' to Ivan." (Underscore in original.) The family court found the loans "should have been specifically disclosed"; that the "technical breach of the duty to disclose" does not support exemplary damages; and that "the proper remedy for this fiduciary disclosure breach" is "the value of the house the parties jointly own in Croatia" under section 1101, subdivision (g).

concerned findings required to support an award of attorney fees under a different section of the Family Code.

Kate further argues that the evidence does not support an impairment finding because a person cannot act for the benefit of the community, yet simultaneously breach a fiduciary duty to the community. A spouse's fiduciary duty extends to the other spouse, not the community. Kate had the duty under section 1100, subdivision (e) to "make full disclosure" to Peter "of all . . . information regarding the existence . . . of all assets" and to provide access to "all information, records, and books that pertain to the value and character of those assets and debts, upon request." The trial court found that Peter wanted to be kept apprised of the community's financial dealings when the relationship began to disintegrate, and made repeated requests for copies of documents before separation that were not voluntarily produced to him or his attorney. That finding is supported by the evidence. Peter's one-half interest in the community estate was impaired to the extent the transferred funds were not returned to the community, even if they were consistent with his desire to help his children. (*Schleich*, *supra*, 8 Cal.App.5th 267, 284 [husband breached fiduciary duty by failing to disclose money received in repayment of a loan; breach was not subject to a § 1100, subd. (g) remedy because the loan proceeds were received by the community].)

### 2. Offset

Kate argues that Peter was not impaired by the $500,000 transferred to Magdalena because those funds were offset by $500,000 Kate received from Magdalena in the same timeframe. Kate wrote two $250,000 checks to Magdalena—one in 2011 and another in 2012. We address the transactions separately.

*The 2011 check*

Kate wrote a $250,000 check to Magdalena in March 2011. Two months later, Magdalena wrote Kate a check for $350,000 with "loan refund" written on the memo line. Kate and her expert represented the $350,000 was repayment for the $250,000

8

check and a $100,000 loan from November 2010. The November 2010 loan was documented by a $100,000 cancelled check to Magdalena from the parties' joint account dated November 9, 2010 (check no. 6124). That check, endorsed by Magdalena, included the notation "loan" on the memo line.

The family court adopted the conclusion of Peter's expert that there was no nexus between the $250,000 check Kate wrote to Magdalena in March 2011 and the $350,000 check Magdalena wrote to Kate two months later. Peter's expert attributed the November 2010 check to a forgiven $100,000 loan to Ivan. Peter's expert relied on the parties' July 2012 schedule of gifts to Ivan, which included a $100,000 loan on November 9, 2010; the absence of any payment or series of payments to Ivan amounting to $100,000 on or around that date; and the absence of documents indicating Kate's $250,000 check was a loan to Magdalena. He conceded on cross-examination to consulting with counsel regarding the conflicting documents, and that his conclusion regarding the $100,000 was a judgment call. The court found that the $100,000 check to Magdalena "was not actually repaid" with the $350,000 check because the loan was "actually a loan to Ivan" and forgiven. Finding Kate "provide[d] no other explanation" linking Magdalena's $350,000 check to Kate's $250,000 check, the court concluded the $250,000 was "excess cash to Kate."

The conclusion of Peter's expert that the $100,000 check to Magdalena was in fact a gift to Ivan is not supported by the evidence. That check (no. 6124) was written to and endorsed by Magdalena; Kate identified the $100,000 gift to Ivan in an e-mail to the attorney who prepared the gifting schedules as check no. 6123; and Ivan testified that he "wasn't diligent" in reviewing his gifting schedule for accuracy. Without a showing that $100,000 was transferred from the community to Ivan on or near November 9, 2010, the evidence could support a finding that the November 9, 2010 entry on Ivan's gift schedule was a mistake; but it does not support a finding that funds actually transferred to Magdalena were intended for and redirected to Ivan, and therefore not repaid by

9

Magdalena. (*Juen v. Alain Pinel Realtors, Inc.* (2019) 32 Cal.App.5th 972, 978-979 [" 'where the issue on appeal turns on the failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' "].)

Kate, as the spouse who managed the community finances, bears the burden of proof regarding missing assets. (See *In re Marriage of Prentis-Margulis & Margulis*, *supra*, 198 Cal.App.4th 1252, 1271.) Kate met that burden here by establishing the $250,000 was returned to the community. The evidence compels a finding that Magdalena's $350,000 "loan refund" check to Kate repaid the November 2010 $100,000 loan and the March 2011 $250,000 loan. The absence of a notation on the $250,000 check (or elsewhere) designating those funds as a loan does not contradict or impeach that evidence.

### The 2012 check

Kate's expert opined that the $250,000 check Kate wrote to Magdalena in May 2012 repaid a $150,000 loan from May 2011 (on May 16, 2011, Magdalena wrote Kate a check for $150,000, with "loan refund" written on the memo line); repaid a small amount of interest on that loan ($4,875); and the balance was a new loan to Magdalena of $95,125. Following a trial recess during which time the expert and Kate spoke, the expert changed his testimony regarding the $4,875 attributed to interest. The expert testified the $4,875 was not interest on the $150,000 loan but was interest paid by and being returned to Magdalena.

Kate did not testify about the interest or the $95,125 loan, but she explained the basis of the $150,000 loan the community received from Magdalena, which the $250,000 check was to repay. Kate testified that Magdalena had loaned the community $150,000

10

in May 2011 for the community to purchase a $1.1 million condominium in San Francisco for Magdalena and Ivan. Kate planned to finance the property in part with a line of credit against the community residence in Cupertino. Kate and Peter applied for that loan in April 2011, but it was not funded in time to close on the condo. The condo "was a deal of a lifetime," so Kate scrambled to secure the funds. Kate recalled Accura bonuses, and Magdalena contributed $150,000 of her own money. Kate issued a $1.1 million promissory note to Ivan and Magdalena secured by a deed of trust against the San Francisco property. Of the $250,000 transferred to Magdalena in 2012, Kate was returning the $150,000 used to purchase the condo so that Magdalena and Ivan would be on equal footing with regard to their indebtedness to their parents.

Peter's expert did not accept Kate's explanation of the transaction. In his view, "loan refund" noted on the $150,000 check indicated that Magdalena was repaying (not extending) a loan. He pointed out that the word "refund" was interlineated on the copy of the cancelled check which Kate had provided to her expert, who in turn provided it to Peter's expert when they exchanged letters regarding their findings. He also noted the lack of documentation (other than Peter's gift tax return) characterizing $95,125 as a loan to Magdalena.

The family court rejected the opinion of Kate's expert because his math was supported only by Kate's representations. The court found that the expert used an "unsupported plug figure" ($4,875) "to make the transaction add up," without due diligence to support his conclusion, and noted his changed testimony regarding the $4,875 interest payment. The court agreed with Peter's expert that the memo "loan refund" indicated Magdalena was repaying a $150,000 loan. It found that the copy of the $150,000 check with the word "refund" crossed out had been altered, and that a "possible conclusion regarding the facts of this case is that Kate altered documents in order to defraud Peter of his fair share of the community estate, specifically in the amount of $599,465.00." As for the purported $95,125 gift to Magdalena, the court noted that

11

Peter's expert was unable to trace the amount to transactions, or a series of transactions, from the parties' accounts.

It was within the trial court's discretion to reject the conclusions of Kate's expert to the extent they were based on Kate's own representations. But even if the expert's conclusions are rejected for lack of corroboration, the evidence does not support a finding that of the $250,000, no loan was made to Magdalena and forgiven by the parties. The $95,125 loan is documented in a July 2012 e-mail from Kate to the estate planning attorney and forwarded to Peter. Regarding community gifts intended for Magdalena, Kate wrote "$95,125.00, 5/22/12, ck 2565. Check 2565 was for $250K, $150K loan refund from me and Peter to her + $4,875.00 interest and $95,125.00 new loan to her." The $95,125 loan, traced to the $250,000 check by that e-mail, was entered on the schedule of gifts to Magdalena in July 2012, signed by Peter, and declared on Peter's 2012 tax return. That evidence compels a finding that the community loaned (and forgave) Magdalena $95,125.[3] (*Juen v. Alain Pinel Realtors*, *Inc.*, *supra*, 32 Cal.App.5th 972, 978.)

### 3. Section 1101, subdivision (g)

Subdivision (g) provides, "Remedies for breach of the fiduciary duty by one spouse . . . shall include, but not be limited to, an award to the other spouse of 50 percent, or an amount equal to 50 percent," of any undisclosed or transferred asset, plus attorney fees and court costs. (§ 1101, subd. (g).) Kate argues an award under subdivision (g) is

---

[3] Regarding the family court's "possible conclusion" that Kate altered documents to defraud Peter of his share of the community estate, we observe that "refund" was interlineated on the copy of the check Kate provided to her expert, and the following was handwritten (presumably to assist her expert): "for 5/11 550,000 condo SF 125 Alhambra loan balance 400k → payments." Kate also handwrote notes on the copy of the $350,000 check for her expert: "for 11/9/10 100k [¶] for 3/1/11 250K." Those documents were not held out to either expert or the court as originals, and neither expert's opinion rested upon the interlineations. Kate's expert relied on Kate's verbal explanation regarding the transactions, and Peter's expert relied on bank records Kate provided during discovery.

limited to 50 percent, or an amount equal to 50 percent of the value of the undisclosed asset. In her view, construing the phrase "shall include, but not be limited to" to permit additional sanctions at the court's discretion is contrary to legislative intent and would render meaningless the distinction between subdivisions (g) and (h). We agree that interpreting subdivision (g) as giving the family court discretion to impose additional sanctions blurs the distinction between subdivision (g) and subdivision (h), and renders meaningless the requirement that a "100 percent of the asset" remedy requires clear and convincing evidence of oppression, fraud, or malice under subdivision (h). To avoid an absurd result (*Farnow v. Superior Court* (1990) 226 Cal.App.3d 481, 486), we construe the phrase "but not be limited to" to mean a trial court may impose other statutory sanctions (as well as the remedy under section 1101, subdivision (c)) in addition to 50 percent of the asset and attorney fees authorized under subdivision (g).

Kate argues that section 1101, subdivision (g) does not authorize an award of unrelated property as a remedy for the fiduciary breach. We disagree, at least to the extent the award offsets an equalizing payment sought by the breaching spouse for a community asset which the complaining spouse seeks to retain as separate property. Kate's authorities do not persuade us otherwise. The court in *In re Marriage of Simmons* (2013) 215 Cal.App.4th 584, 594, held that the subdivision (h) remedy did not apply to nondisclosures involving separate property. The court in *Schleich* extended that holding to awards under subdivision (g), as both subdivisions provide remedies for a spouse's fiduciary breach that impairs the other spouse's community interest. (*Schleich*, *supra*, 8 Cal.App.5th 267, 279; see also *In re Marriage of Prentis-Margulis & Margulis*, *supra*, 198 Cal.App.4th 1252, 1257-1258; 1270 [upholding "value of the asset" award].) *In re Marriage of Fossum* (2011) 192 Cal.App.4th 336, 347-348, and *In re Marriage of Hokanson* (1998) 68 CalApp.4th 987, 993, addressed the award of mandatory attorney fees under subdivision (g). To the extent a subdivision (g) award is offset in whole or in

13

part by a buyout or equalizing payment, the award does not violate the statutory mandate that the community estate be divided equally.

### 4. Remaining Arguments

Kate argues the trial court abused its discretion by not determining the value of the community home in Croatia in formulating its section 1101 remedy. Under section 1101, subdivision (g), the trial court is required to assess the undisclosed asset at its highest value, whether it be date of breach, date of sale, or date of the court's award. The valuation applies to the undisclosed or transferred asset (cash in this case), not to an offsetting asset. Kate valued the Croatia home in her 2017 schedule of assets and debts to be $1,003,200, and she sought a 50 percent equalizing payment based on that value. The court did not abuse its discretion using the same valuation when it formulated a remedy under subdivision (g).

We reject Kate's argument that the award of the community home in Croatia to Peter was intended to be punitive. Peter had asked that the residence be awarded to him to remedy Kate's breaches given that she lacked sufficient funds to satisfy a judgment, and Kate did not wish to retain an interest in the property but rather asked that the home be sold and divided equally or that Peter buy her out.

Finally, we reject Peter's argument that the section 1101, subdivision (g) award may be upheld as a sanction under section 2107, subdivision (c). That statute applies to disclosure violations in dissolution proceedings. Here, the fiduciary breach extended to Kate's nondisclosure beginning before dissolution proceedings were initiated.

### B. SANCTIONS UNDER SECTION 2107

Section 2100, subdivision (b) announces a public policy of full disclosure and cooperation in a marital dissolution. To that end, the statute mandates in the early stages of a dissolution proceeding "a full and accurate disclosure of all assets and liabilities in which one or both parties have or may have an interest . . . regardless of the characterization as community or separate, together with a disclosure of all income and

14

expenses of the parties." (§ 2100, subd. (c).) The statute imposes "a continuing duty to immediately, fully, and accurately update and augment that disclosure to the extent there have been any material changes" so that "each party will have a full and complete knowledge of the relevant underlying facts." (*Ibid.*)

Section 2102 extends the fiduciary standards set forth in section 721 "to all activities that affect the assets and liabilities of the other party" from the date of separation to the date community property is distributed in dissolution proceedings. (§ 2102, subd. (a).) Those activities include (1) "accurate and complete disclosure of all assets and liabilities in which the party has or may have an interest or obligation and all current earnings, accumulations, and expenses," including "immediate, full, and accurate update[s]"; (2) accurate and complete written disclosure of any investment or business opportunity that results from an investment, significant business activity, or income-producing opportunity of either spouse during the marriage before separation; and (3) the operation or management of a business (or a business interest) in which the community may have an interest. (§ 2102, subd. (a)(1)-(3).)

Section 2107 mandates monetary sanctions against a party who fails to comply with dissolution disclosures. (§ 2107, subd. (c).) "Sanctions shall be in an amount sufficient to deter repetition of the conduct or comparable conduct, and shall include reasonable attorney's fees, costs incurred, or both, unless the court finds that the noncomplying party acted with substantial justification or that other circumstances make the imposition of sanctions unjust." (*Ibid.*)

The family court found that Kate breached her duty under section 2100, subdivision (c) to disclose $6.1 million in earnings working for Accura between 2013 and 2016 and her 2016 purchase of a home in Croatia. Under section 2107, subdivision (c), Kate was sanctioned $73,000 in attorney fees and costs, $220,952 in expert costs, and $200,000 to deter further disclosure violations.

15

### 1. Kate's Nondisclosures

Kate argues she complied with her duty to disclose postseparation income by disclosing her earnings in 2013 and 2017, which was "months before trial." The Legislature requires that "all current earnings" be "immediate[ly], full[y], and accurate[ly]" updated. (§ 2102, subd. (a)(1).) The record supports the trial court's finding that Kate failed to comply with that requirement. Peter became aware of Kate's postseparation earnings in 2016 in connection with Kate's real estate purchase in Croatia, which resulted in further discovery and Kate's production in 2017 of W-2s for years 2013 to 2016. Accura paid Kate $880,000 in 2013; $1.44 million in 2014; $2.41 million in 2015; and $1.4 million in 2016—all income earned pursuant to an agreement Kate reached with Ivan in early 2013. That agreement was a material change requiring Kate to "immediately, fully, and accurately update" her disclosures with the postseparation earnings. (§ 2100, subd. (c).) She was in breach as early as 2013 for not doing so. Further, Kate stated in her March 2013 income and expense declaration that she had no earnings in the preceding 12 months. Kate also omitted from her April 2013 interrogatory responses that she had earned $1.206 million in 2012. And in answers to supplemental interrogatories in 2017, Kate omitted earnings of $1.4 million in 2016 and $2.41 million in 2015. Her 2017 interrogatory responses were also misleading in that she stated she was not on Accura's payroll and did not receive pay stubs from the company. (§ 721, subd. (b) [the spousal relationship "imposes a duty of the highest good faith and fair dealing on each spouse"].)

Kate challenges the finding that she breached her duty to disclose her 2016 real estate purchase because Peter knew about the acquisition. Peter testified that he was aware of the purchase when Kate travelled to Croatia to sign papers. But Peter's awareness did not excuse Kate's statutory duty to disclose the acquisition in her schedule of assets. (§ 2102, subd. (a)(1).) The home was purchased in August 2016, and Kate waited until July 2017 before adding the acquisition to her schedule of assets.

16

## 2. Attorney Fees and Costs

Kate argues that an award of attorney fees and costs under section 2107, subdivision (c) must be "tethered to" her nondisclosures. In her view, the attorney fees and expert costs award to Peter was required to have been based on the nondisclosures.

Peter sought $466,044.58 in attorney fees, and the court exercised its discretion to limit the award ($70,000) to fees incurred during pretrial discovery. Between May 2012 and November 2013, Peter incurred $4,500 in attorney fees related to the parties' preseparation finances. No additional amounts were incurred until 2017, when Peter incurred approximately $68,000 in discovery-related fees and costs after learning of Kate's postseparation earnings. Peter hired a forensic accountant in early 2013 to trace the parties' preseparation expenditures, a task that was unrelated to Kate's nondisclosure of postseparation earnings and acquisitions. Peter's expert was tasked in 2017 with examining Kate's postseparation earnings. The expert testified at trial and billed $220,952 for his services. We see no abuse of discretion in either award. Both were reasonable in light of Kate's ongoing disclosure violations beginning in 2013.

Kate cites to *Menezes v. McDaniel* (2019) 44 Cal.App.5th 340, 344, where the husband sought $500,000 in postjudgment sanctions under multiple sections of the Family Code and the Code of Civil Procedure. A $200,000 sanction was awarded only under section 271. (*Menezes*, at pp. 344-345 & fn. 2.) The record there identified $189,427 in attorney fees and costs, which included possible duplicative fees and $18,000 in unrecoverable travel expenses. (*Id*. at p. 351 & fn. 5.) The *Menezes* court determined that insufficient evidence connected the entire $200,000 sanction to attorney fees and costs, and the matter was remanded for further consideration. (*Id*. at p. 352.) Unlike in *Menezes*, here the record supports $73,000 in attorney fees and costs and $220,952 in expert fees. Peter's attorney and expert submitted monthly invoices documenting every billable transaction. The invoices provide sufficient detail to support the awards.

17

Kate also cites *In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, but we do not see that case as demanding a different result. After recognizing that sanctions under section 2107 are "similar to" sanctions under section 271 and civil discovery sanctions, the court reviewed a sanctions award under section 2107, subdivision (c) for abuse of discretion in the first instance. (*In re Marriage of Feldman*, at p. 1478.) We uphold the sanctions award here under that standard.

### 3. $200,000 Monetary Sanction

We reject Kate's argument that the $200,000 monetary sanction to deter future misconduct was not authorized by section 2107, subdivision (c). Courts have consistently recognized that section 2107 authorizes both monetary sanctions and reasonable attorney fees. (*In re Marriage of Feldman*, *supra*, 153 Cal.App.4th 1470, 1477 ["Section 2107, subdivision (c) requires the trial court to impose monetary sanctions and award reasonable attorney fees if a party fails to comply with any portion of the chapter of the Family Code that deals with a spouse's fiduciary duty of disclosure during dissolution proceedings"]; *In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1318-1319; *In re Marriage of Sorge* (2012) 202 Cal.App.4th 626, 651-652.) Had the Legislature intended sanctions for disclosure violations under section 2107 to be limited to attorney fees, it would not have amended section 2107, subdivision (c) to provide for "sanctions . . . in an amount sufficient to deter repetition of the conduct or comparable conduct," including reasonable attorney fees and costs as a component of the sanction. (Stats. 2001, ch. 703 § 6 [Assem. Bill No. 583]. Before the 2001 amendment, section 2107 authorized attorney fees and costs only to remedy disclosure violations.) By its terms, subdivision (c) of section 2107 provides for monetary sanctions in addition to reasonable attorney fees and costs.

### 4. Remaining Arguments

Peter's claims arose from Kate's lack of transparency both during and after separation. Kate contends Peter had unclean hands because he did not prevail on all

claims and did not comply with all disclosure requirements himself. But new information on Peter's 2017 schedule of assets and debts does not, by itself, establish a disclosure violation. Nor does Kate's testimony that Peter's lawyers did not disclose his purchase of a business interest in a restaurant shown on Peter's 2017 schedule of assets and debts. She has not established the date of the transaction relative to Peter's disclosure, nor that it represented a material change in Peter's financial profile.

## C. SECTION 271 SANCTIONS

Section 271, located under the Family Code's General Provisions, authorizes an award of attorney fees and costs as a sanction when a party's conduct "frustrates the policy of the law to promote settlement of litigation" and "to reduce the cost of litigation by encouraging cooperation between the parties and attorneys." (§ 271, subd. (a).) Kate argues the trial court unfairly denied her request for section 271 fees based on Peter's "blatant forum shopping," inconsistent positions, and overreach.

We see no abuse of discretion on this record. Peter filed suit in Croatia in 2016 related to the characterization of the home Kate purchased there that year. The family court noted the lawsuit had been stayed pending its decision in the instant litigation, and expressly exercised its discretion not to sanction Peter for filing that suit, finding that "the bulk of the blame for prolonging this litigation because of nondisclosure of financial matters that could have easily been produced" rested with Kate. The court recognized that Peter also contributed to prolonging the litigation, which is why it awarded Peter only part of his attorney fees under section 2107, subdivision (c).

## D. KATE'S HOME IN CROATIA

Kate asserts the family court should have confirmed as her separate property the home she purchased in Croatia in 2016. Peter counters (for the first time in this court) that the family court lacked authority to confirm the property, as it was separate property acquired after separation.

19

The family court's authority in dissolution proceedings is to adjudicate the community estate. (§ 2550 [in dissolution proceedings, "the court shall . . . divide the community estate of the parties equally"].) Although jurisdiction to divide property is limited to the community estate (Hogoboom & King, Cal Practice Guide: Family Law (The Rutter Group, 2022) ¶ 8:901 ["Except as provided by [§ 2650], property division jurisdiction under the Family Code extends only to the *community estate*"]), a court dividing a community estate "may *characterize* disputed assets and liabilities as being separate or community, [and] may *confirm* separate property to the owner spouse." (*Id.*, ¶ 8:903; *Kirsch v. Kirsch* (1896) 113 Cal. 56, 63 [a court in dissolution proceedings "has . . . jurisdiction to determine whether or not a given piece of property is or is not community property"]; *In re Marriage of Dorris* (1984) 160 Cal.App.3d 1208, 1215 [same].)

Peter's asserted interest in the Croatia property derived from his claim to Kate's postseparation earnings. The family court expressly found those earnings were Kate's separate property and that she purchased the home in Croatia using those funds. To the extent the court did not take the additional step of "confirming" the home to Kate, we see no prejudice. (Cal. Const. art. VI, § 13 ["No judgment shall be set aside . . . in any cause . . . for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."].) The statement of decision is entirely clear that the home is Kate's separate property.

## IV. DISPOSITION

The judgment is reversed and the matter remanded for the family court to reduce Peter's Family Code section 1101 award for Kate's fiduciary duty breaches to $87,437.50 (one half of $174,875 misappropriated by Kate) and to recalculate an equalizing payment accordingly. The parties shall bear their own costs on appeal.

_____

Grover, J.

**WE CONCUR:**

_____

Greenwood, P.J.

_____

Lie, J.

H047406 – *Matkovic v. Matkovic*